**Thomas R. TAYLOR, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–1572.

United States Court of Veterans Appeals.

Sept. 25, 1998.

Thomas R. Taylor, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and James L. Calis, Washington, DC, were on the pleadings for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court.

KRAMER, Judge, filed a concurring opinion.

IVERS, Judge:

The veteran appeals from an August 21, 1996, Board of Veterans' Appeals (BVA or Board) decision which (1) denied entitlement to educational benefits under chapter 30, title 38, United States Code, for the veteran's enrollment in college from August 31 to Sep-

tember 14, 1992; and (2) denied entitlement to educational benefits at a full-time rate for concurrent enrollment in a resident course and in an independent-study course between June 21 and August 13, 1993. The appellant has filed an informal brief, and the Secretary has filed a motion for summary affirmance. For the reasons stated below, the Court will affirm the BVA's August 21, 1996, decision.

## I. FACTS

The veteran served in the United States Navy from July 1972 to his retirement in February 1995. R. at 12–18. The claim underlying this appeal is for educational benefits under chapter 30, title 38 of the United States Code, for college courses taken by the veteran while he was on active duty. R. at 2.

The University of La Verne (the University) in San Diego, California, submitted an enrollment certification, received by VA in October 1992, showing that the veteran was enrolled in college degree courses from September 15, 1992, to October 23, 1992. R. at 30. VA sent a letter to the veteran in October 1992, notifying him that he "ha[d] been awarded education benefits under the Montgomery GI Bill—Active Duty Educational Assistance Program (Chapter 30)," [hereinafter Chapter 30], for the certified enrollment period. R. at 33.

Similarly, in July 1993, VA received an enrollment certification from the University for the veteran's enrollment from June 21, 1993, to August 13, 1993, in two classes, one, a 3–credit–hour in-residence course, and the other, a 3–credit–hour independent-study course. R. at 36. The veteran was awarded benefits at a three-quarter-time rate for that period of enrollment. R. at 6, 48.

In January 1994, the University sent a letter to VA seeking adjusted payments for the 1992 and 1993 enrollment periods covered in the certifications. R. at 39. A corrected certification was submitted for the 1992 period to show the beginning date of enrollment as August 31, 1992, instead of September 15, 1992. R. at 42. As to the 1993 period, the letter noted that the veteran had been paid at a three-quarter-time rate for that period, and asserted that payment

should have been based on full-time attendance in a summer term. R. at 39.

VA responded to the University's letter in a letter to the veteran telling him that no additional payments could be made. R. at 48. Regarding the 1992 period, VA wrote: "[VA] cannot pay for claims when the effective date is more than 1 year prior to date of receipt. Claim was received January 18, 1994." *Id.* VA explained that three-quarter-time was the correct payment rate for the 1993 period because "[i]ndependent study which began prior to July 1, 1993, was measured differently from class room courses." *Id.*

In March 1994, the veteran filed a Notice of Disagreement and requested a hearing in response to the VA letter denying payment of additional educational benefits. R. at 50–51. VA issued a Statement of the Case and scheduled a hearing. R. at 61–69. At the hearing, the veteran's testimony concerned educational benefits for the previously discussed 1992 and 1993 periods, and apparent shortfalls in VA payments of his benefits. R. at 84–97. Regarding the alleged shortfalls, the veteran stated that he had requested an audit of his VA educational benefits records, but that a response from VA was pending. R. at 91–92. The hearing officer identified the audit as "a separate matter," and stated that he wanted to make sure that the audit would be performed. R. at 95; *see also* R. at 92.

The hearing officer's decision, dated May 16, 1994, denied entitlement to payment of additional educational benefits for both the 1992 and 1993 periods. R. at 99–100. The decision noted that the hearing was "to be considered the veteran's Substantive Appeal in lieu of a VA Form 9," and asked VA to take appropriate action regarding the veteran's requested audit. R. at 100.

In the August 1996 BVA decision presently on appeal, the Board found that the veteran was not entitled "to a retroactive award of educational benefits ... for his enrollment from August 31, 1992[,] to September 14, 1992," nor "to payment of full-time Chapter 30 educational benefits for concurrent enrollment in a resident course and an independent-study course prior to July 1993." R. at 3.

## II. ANALYSIS

### A. The August 31 to September 14, 1992, Period

■ The regulations for administering Chapter 30 benefits are in Subpart K, Part 21 of title 38 of the Code of Federal Regulations. The regulations provide, in pertinent part, that the commencing date of an award of educational assistance "shall be the *latest* of the following dates[:] (1) The date the educational institution certifies under paragraph (b) or (c) of this section. (2) The date one year before VA receives the veteran's or servicemember's application or enrollment certification, whichever is the later." 38 C.F.R. § 21.7131(a) (1997) (emphasis added). Paragraphs (b) and (c) of section 21.7131 describe dates that will be recognized as start dates for different types of courses.

In the present case, the University certified, on January 12, 1994, that the veteran had been enrolled in college degree courses from August 31, 1992, to October 23, 1992. R. at 42. VA received the enrollment certification form on January 18, 1994. R. at 48. The date the University certified as the enrollment date was August 31, 1992, and the date one year before VA received the enrollment certification was January 18, 1993. The later of these two dates, and, therefore, the commencing date of an award of educational benefits, would have been January 18, 1993. *See* 38 C.F.R. § 21.7131(a)(1) and (2). Since the commencing date of any award was after the enrollment period for which the veteran sought benefits, no award could be made. The Board correctly applied the regulations to the factual evidence to reach this conclusion and, thus, its action was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994) (applicable law requires denial of claim); *cf.* 38 U.S.C. § 7261(a)(3) (Court must set aside Board decisions *not* in accordance with the law).

## B. The June 21 to August 13, 1993, Period

The veteran contends that his Chapter 30 educational benefits should be paid at the full-time rate for courses taken in the summer of 1993. Appellant's Brief (Br.) at 4–5. Under the law in effect at the time of the veteran's enrollment, however, the courses could not be considered full-time.

The statute for measuring college courses for purposes of determining educational benefits, 38 U.S.C. § 3688, was amended by the Veterans' Benefits Act of 1992, Pub.L. No. 102–568, § 316(a), 106 Stat. 4320, 4333. The amendment was expressly made applicable "to enrollments in courses beginning on or after July 1, 1993." Pub.L. No. 102–568, § 316(c), 106 Stat. at 4334. Because the veteran enrolled in his courses on June 21, 1993, the version of 38 U.S.C. § 3688 in effect prior to the 1992 amendment was applicable for measuring his courses to determine educational benefits. *Cf. Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991)("[W]here the law or regulation changes *after a claim has been filed* or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant ... will apply *unless Congress provided otherwise.*" (Emphasis added.)).

■ The veteran has argued in his brief that VA failed to inform his university of the forthcoming change in the law relative to independent study courses. Appellant's Br. at 5. VA, however, had no duty to inform either the veteran or his university of the amendments to 38 U.S.C. § 3688 that were to take effect as to enrollments beginning on or after July 1, 1993. *See Lyman v. Brown,* 5 Vet.App. 194, 196–97 (1993).

■ Prior to amendment, the statute governing grants of Chapter 30 educational benefits defined a full-time course as one "offered by a college or university in residence on a standard quarter- or semester-hour basis." 38 U.S.C. § 3688(a)(4) (1991). "'[I]n residence on a standard quarter- or semester-hour basis' means a study at a site or campus ... requiring pursuit of regularly scheduled weekly class instruction," at a rate of one class session per week, throughout the quarter or semester, for each credit hour allotted. 38 U.S.C. § 3688(c) (1991). Additionally, for a course to qualify as full-time, the minimum number of required semester credit hours, or the equivalent thereof, was twelve. 38 U.S.C. § 3688(a)(4) (1991).

A standard quarter term was usually 10 to 13 weeks long, and a standard semester term usually 15 to 19 weeks long. *See* 38 C.F.R. §§ 21.4272(g), 21.4200(b)(3), (4) (1992). For courses taken in a non-standard term, full-time equivalency was determined by "[m]ultiplying the credits to be earned in the term by 18 if credit [was] granted in semester hours, or by 12 if credit [was] granted in quarter hours, and ... [d]ividing the product by the number of whole weeks in the term." 38 C.F.R. § 21.4272(g) (1992). Whole weeks were determined by dividing by 7 the total number of days in the term (minus any vacation period of 7 days or more). A remainder of 3 or fewer days would be disregarded; a remainder of 4 days or more would be considered a whole week. *Id.*

Before the 1992 amendment of 38 U.S.C. § 3688, measurement of independent-study courses was according to the regulations. One subparagraph in the regulations dealt specifically with measurement of independent study courses taken concurrently with "resident training," and read, in pertinent part, as follows:

> If the independent study credit hours the veteran ... is pursuing would equal half time or more, according to the table in § 21.4270(c) of this part, VA shall convert them to the highest number of hours considered to be less than half time training.... [VA] will add the number of independent study credit hours ... to the number of hours of resident training. The hours of resident training will be either credit hours or hours based on the number of standard class sessions as required by paragraph (e) or (f) of this section, as appropriate.

38 C.F.R. § 21.4272(i)(1) (1992); *see also* 38 C.F.R. § 21.7170(c) (1992) (making § 21.4272(i)(1) applicable to courses taken under Chapter 30).

This regulation, while difficult to apply in this case, is applicable. We, therefore, will

interpret and apply the regulation and address its shortcomings in turn.

The regulation gave no instruction for the circumstance of independent study credit hours equaling less than half time. "Resident training" was not defined in the subject regulation nor in any relevant regulations. The definition of hours of resident training did not explicitly allow for use of full-time equivalency credit hours, as was provided for non-standard term credit hours under 38 C.F.R. § 21.4272(g).

For purposes of this analysis, we conclude that independent study credit hours equaling less than half time are counted at face value. We interpret "resident training" to mean the same as courses taken in residence, and resident training credit hours to mean credit hours as measured in a standard term or a non-standard term, allowing for full-time equivalency conversion.

Measuring the veteran's college degree courses under the applicable law, then, requires a determination as to whether the veteran was taking in-residence or independent study courses, or both concurrently, whether his courses were taken on a standard semester- or quarter-hour basis, or in a non-standard term, and the number of credit hours for which he was enrolled. *See* 38 U.S.C. § 3688(a)(4), (c), (d) (1991); 38 C.F.R. §§ 21.4272, 21.7170(c) (1992).

In the summer of 1993, the veteran was concurrently enrolled in 3 semester hours of in-residence study and 3 semester hours of independent study. R. at 36, 39, 45. The enrollment period was eight weeks, from June 21, 1993, to August 13, 1993, a non-standard term for Chapter 30 educational benefit purposes. *Id.; see* 38 C.F.R. §§ 21.4272(g), 21.4200(b)(3), (4) (1992).

The veteran's 3–credit in-residence course, taken in a non-standard term, was appropriately measured under 38 C.F.R. § 21.4272(g) (1992). The formula set forth in that regulation was correctly applied to produce 6.75 "equivalent credit hours." 38 C.F.R. § 21.4272(g)(3)(1992). Allowance of 3 credit hours for the veteran's independent study course was appropriate, since 3 credit hours were measured as 1/4–time or less under 38

C.F.R. § 21.4270(c) (1992). *See* 38 C.F.R. § 21.4272(i)(1)(i) (1992). Pursuant to 38 C.F.R. § 21.4272(i)(1)(ii) (1992), the 6.75 equivalent resident credit hours were correctly added to the three independent study credit hours for a total of 9.75 credit hours.

Once the veteran's credit hours are calculated pursuant to the regulations, they must be measured as three-quarter-time, after being rounded up to 10 in favor of the veteran. *See* 38 C.F.R. §§ 21.4272(i)(1)(iii), 21.4270(c) (1992). We interpret section 21.4272(i)(1)(iii) of title 38 of the Code of Federal Regulations to mean that the total of independent study hours plus resident training credit hours should be measured under section 21.4270(c), and we conclude that the reference to paragraph (i)(1)(i) in 21.4272(i)(1)(iii) is a typographical error. In sum, the BVA correctly measured the veteran's credit hours for courses undertaken from June 21, 1993, to August 13, 1993, as three-quarter-time.

When the Board applied the statute and regulations to the veteran's factual data concerning his college enrollment in the summer of 1993, it reached the same result and conclusion as that represented in VA's award of Chapter 30 benefits for that period. *Compare* R. at 6–8 *with* R. at 48. The Board's application of the law and regulations to the undisputed facts was correct, and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Sabonis, supra; cf.* 38 U.S.C. § 7261(a)(3).

### C. Equitable Relief and Pending Matters

The veteran's Chapter 30 educational benefits were correctly awarded under the applicable law for both periods that he has challenged in this case. Nonetheless, the veteran is not precluded from seeking equitable relief, even though "[t]his Court is not a court of equity and cannot provide equitable relief." *Moffitt v. Brown,* 10 Vet.App. 214, 225 (1997). The Secretary of Veterans Affairs has discretionary equitable power to provide relief where he determines that veterans benefits "have not been provided by reason of administrative error on the part of the Federal Government or any of its employees." 38 U.S.C. § 503(a); *see Harvey v.*

*Brown,* 6 Vet.App. 416, 425 (1994); *Darrow v. Derwinski,* 2 Vet.App. 303, 304–06 (1992).

Finally, at his RO hearing and in his brief in the present appeal, the veteran raised the issue of whether his VA educational benefits had been properly paid at a daily rate. R. at 91–92; Appellant's Br. at 3–4. The RO hearing officer correctly noted that this issue was "a separate matter" and not part of the current appeal. R. at 95. Since resolution of the issue is pending the outcome of VA's audit of the veteran's educational benefits account, the matter is not before the Court at this time. *See Kandik v. Brown,* 9 Vet.App. 434, 438 (1996) (Court does not have jurisdiction to address claim for education or training benefits when claim is pending at the RO).

### III. CONCLUSION

Upon consideration of the record and the pleadings filed in this appeal, the Court holds that the Board did not commit factual or legal error in (1) denying entitlement to educational benefits under chapter 30, title 38, United States Code, for the veteran's enrollment in college from August 31 to September 14, 1992; and (2) denying entitlement to educational benefits at a full-time rate for concurrent enrollment in a resident and an independent-study course between June 21 and August 13, 1993. The Secretary's motions for summary affirmance and for a stay of proceedings are denied, the motion is accepted in lieu of a brief, and the BVA decision of August 21, 1996, is AFFIRMED.

KRAMER, Judge, concurring:

I concur with the Court's excellent opinion except as to that portion of part II.B. that concludes that the laws and regulations that were in effect in June 1993 were properly applied to determine that the appellant was a three-quarter-time student. The appellant has not contested this issue and I would not address it. The appellant has argued only that the 1992 amendments to the veterans benefits laws should have been applied to his claim. As the Court's opinion properly concludes in the beginning of part II.B., this

argument must fail because that statute explicitly limits its application to "enrollments in courses beginning on or after July 1, 1993," not the case here. Veterans' Benefits Act of 1992, Pub.L. No. 102–568, § 316(c), 106 Stat. 4320, 4334.