Citation Nr: 1331571 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 08-12 136 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

D. Johnson, Counsel


INTRODUCTION

The Veteran served on active duty from September 1965 to August 1969. The appellant is the Veteran's surviving spouse.

This matter initially came before the Board of Veterans' Appeals (Board) from a November 2006 rating decision of the Department of Veterans' Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. 

The appellant testified before the undersigned Veterans Law Judge in July 2012. A transcript of the hearing is of record.

In March 2013, the Board remanded the appeal for further development, which has since been completed.

The appellant submitted additional evidence and argument, accompanied by a waiver of initial RO review, following the last supplemental statement of the case (SSOC) that was issued in July 2013. 38 C.F.R. § 20.1304.


FINDINGS OF FACT

1. The Veteran died in June 1985. According to the death certificate and autopsy report, the immediate cause of death was coronary sclerosis due to hypertensive arteriosclerotic heart disease. 

2. At the time of the Veteran's death, service connection was in effect for acute viral hepatitis.

3. The Veteran did not have service in Republic of Vietnam or in Korea, in the demilitarized zone (DMZ); exposure to herbicides agents such as Agent Orange has not been shown. 

4. A service-connected disability was not the principal or contributory cause of the Veteran's death.

5. The disease processes leading to the Veteran's death are not attributable to his active military service and were not caused or made worse by any service-connected disability.


CONCLUSION OF LAW

Service connection for the cause of the Veteran's death is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1116, 1310, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.312 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify claimants of the information and evidence necessary to substantiate the claims submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2013). In the context of a claim for Dependency and Indemnity Compensation (DIC) benefits, section 5103(a) notice must include (1) a statement of the conditions, if any, for which a Veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service connected. Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007).

By letters dated in July 2006, May 2008 and April 2012, the appellant was notified of the evidence necessary to substantiate her claim. She was told what information that she needed to provide, and what information and evidence that VA would attempt to obtain. The April 2012 letter identified the disorder for which the Veteran was service-connected for at the time of his death, as required by Hupp. To the extent that notice as required by Hupp was sent after the initial adjudication of this claim, the claim was readjudicated following the April 2012 notification letter by way of a supplemental statement of the case (SSOC) issued in July 2013. This cures the timing problem associated with inadequate notice or the lack of notice prior to the initial adjudication. Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (Mayfield III), citing Mayfield II, 444 F.3d at 1333-34. Under these circumstances, the Board finds that the notification requirements of the VCAA have been satisfied.

The VCAA also requires that VA make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. In this case, the duty to assist has been fulfilled and no further action is necessary under the mandate of the VCAA. The Veteran's service records have been associated with the claim file. VA and private medical treatment records have also been obtained. 

Pursuant to the Board's March 2013 remand directives, the RO attempted to obtain additional treatment records from the VA outpatient treatment clinic (OPC) in Philadelphia, Pennsylvania (PA), but such attempts were unsuccessful. The RO issued a formal finding of the unavailability of the records, and notified the appellant in a letter in July 2013. The RO also sought authorization from the appellant in order to obtain relevant records from Dr. Carvahal, a private cardiologist who reportedly treated the Veteran in 1969. The appellant did not return the authorization form. Rather, in letters dated in April 2013 and August 2013, she stated that Dr. Carvahal could not give her anything in writing. 

Finally, a VA medical opinion was obtained in June 2013. The medical opinion is adequate. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); 38 C.F.R. § 3.159(c) (4). There has been substantial, if not full, compliance with the prior remand directives. 

VA has satisfied both the notice and duty to assist provisions of the law. No further notice or assistance to the appellant is required. 

Analysis

To establish service connection for the cause of the Veteran's death, the evidence must show that a disability incurred in or aggravated by service either caused or contributed substantially or materially to cause death. 38 C.F.R. § 3.312. 

A service-connected disability is the principal cause of death when that disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b). A contributory cause of death is one that contributed substantially or materially to death, combined to cause death, and aided or lent assistance to the production of death. 38 C.F.R. § 3.312(c). It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. Id. 

Generally, minor service-connected disabilities, particularly those of a static nature or not materially affecting a vital organ, would not be held to have contributed to death primarily due to unrelated disability. In the same category there would be included service-connected disease or injuries of any evaluation (even though evaluated as 100 percent disabling) but of a quiescent or static nature involving muscular or skeletal functions and not materially affecting other vital body functions. 38 C.F.R. § 3.312(c)(2).
 
Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). If a chronic disease is shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, may be service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). Disorders diagnosed after discharge will still be service-connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Generally, to establish entitlement to compensation for a present disability, a Veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. All three elements must be proved. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed.Cir. 2004).

Service connection for certain chronic diseases, including arteriosclerosis, cardiovascular renal disease, and hypertension may also be established based upon a legal "presumption" by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. § 1112 (West 2002); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (2012). 

In addition to the foregoing, the law provides a presumption of service connection for certain diseases that are associated with exposure to herbicide agents and that become manifest within a specified time period in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam or in or near the Korean demilitarized zone (DMZ) during specified periods of time. See 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). These diseases include, but are not limited to: ischemic heart disease ((including, but not limited to, acute, subacute, and old myocardial infarction, atherosclerotic cardiovascular disease, including coronary artery disease (including coronary spasm) and coronary bypass surgery, and stable, unstable, and Prinzmetal's angina)). 

Finally, a disability which is proximately due to or the result of a service-connected disease or injury shall be service-connected. 38 C.F.R. § 3.310. 

The Veteran died in June 1985. The death certificate shows his immediate cause of death was coronary sclerosis due to hypertensive arteriosclerotic heart disease. A coroner's report is also of record and reflects that an autopsy was performed. The autopsy report indicates the immediate cause of death was coronary sclerosis due to severe hypertensive arteriosclerotic heart disease. The autopsy report also showed a provisional pathologic diagnosis of a remote myocardial infarction.

At the time of the Veteran's death, service connection was in effect for acute viral hepatitis. 

The appellant contends the heart disease that caused the Veteran's death is related to service. She asserts that the Veteran's complaints of chest pain and elevated blood pressure readings during service, and his continued chest pain right after discharge, support such a finding. She further asserts that his chest pain was misdiagnosed as being related to hepatitis, but was in fact a manifestation of heart disease. To this end, she notes that the Veteran suffered a heart attack in December 1969, only months after discharge. 

Second, the appellant contends that the service-connected acute viral hepatitis either directly caused the Veteran's cardiovascular disease, or aggravated his underlying cardiovascular disease. In support of this contention, she has submitted articles from internet resources which discuss an association between hepatitis and an increased risk of cardiovascular disease.

Service treatment records show the Veteran was diagnosed with acute viral hepatitis in March 1969 and was hospitalized for six weeks. Clinical notes from his hospitalization period reflect several instances of elevated blood pressure readings. At the time of separation from service in April 1969, a physical examination showed he reported having occasional mild chest pain since his episode of hepatitis. 

The appellant reports that after service, the Veteran sought treatment for chest pain at the VA OPC in Philadelphia, PA, in September 1969 and in November 1969, but was only given medication for hepatitis. 

The appellant has also indicated that the Veteran received treatment in 1969 from Dr. Carvahal, a private cardiologist. She stated that Dr. Carvahal told her he recalls treating the Veteran, but could not submit a letter to that effect because he no longer had the pertinent medical records. 

The appellant further indicated that the Veteran suffered a heart attack in December 1969. She identified the Delaware Valley Medical Center as the facility that treated him at that time. In an October 2010 letter, a Registered Health Information Administrator from Aria Health indicated that the medical records of all patients treated at the Delaware Valley Medical Center had been destroyed.

The appellant also submitted internet articles that discuss an association between hepatitis and an increased risk of cardiovascular disease. 

The Board remanded the appeal in March 2013 to obtain a medical opinion on whether there was any causal relationship between the Veteran's service-connected hepatitis and the cause of his death. 

In June 2013, a VA examiner reviewed the Veteran's file and provided a synopsis of the Veteran's pertinent medical and service history in an examination report. The VA examiner expressed the opinion that it is far less likely than not that the Veteran's service-connected acute viral hepatitis caused or contributed to his death. The examiner stated that the Veteran's hospital records give a clear-cut indication of classic infectious hepatitis that, by today's standards, would be considered hepatitis A. The examiner indicated that hepatitis A does not produce any long-term liver damage, and the full autopsy performed on the Veteran did not yield any mention of pathologic abnormalities in the Veteran's liver, and there is no other indication that the Veteran had hepatitis C.

The examiner noted that the Veteran died from severe coronary atherosclerosis and opined there is no evidence that the Veteran's severe coronary atherosclerosis with previous myocardial infarction, which was seen at the autopsy by the pathologist and was attributed to hypertensive atherosclerotic heart disease, had onset in service. The examiner noted that the Veteran was a heavy 3-pack-per-day smoker and had an extraordinarily positive family history of heart disease in that his father died at age 45 of a heart attack (which the Veteran himself had noted on his service entrance examination). 

The examiner further determined that the Veteran's severe coronary atherosclerosis was not initially manifested within a year of service discharge, and was not otherwise etiologically related to his military service. He explained that the Veteran had a very strong genetic predisposition to the development of heart disease and was a heavy smoker, which further exacerbated the genetic predisposition to heart disease. The examiner also stated that there is no question in the scientific medical literature that a strong family history of heart disease, such as this Veteran had, is a major predisposing factor to the development of coronary atherosclerosis. The examiner further determined that there is no evidence that the Veteran had hypertension in service. This was based on his review of the service records and blood pressure readings recorded therein. 

Having carefully reviewed the claims file, the Board determines that the appellant is not entitled to service connection for the cause of the Veteran's death. 

As shown, the Veteran's death certificate and autopsy report list coronary sclerosis due to hypertensive arteriosclerotic heart disease as the immediate cause of death. The preponderance of the evidence shows that coronary sclerosis and hypertensive arteriosclerotic heart disease were not incurred in service, or manifested as chronic disease within a year after the Veteran's discharge from service.

Although the Veteran's service treatment records note complaints of chest pain with hepatitis, the service treatment records and April 1969 separation examination report are negative for findings or diagnoses of any chronic heart disease, to include hypertension. In fact, X-ray and other objective findings remained negative throughout service. These records are highly probative as to the Veteran's condition during service and at the time of his release from active duty as they were generated with the specific purpose of ascertaining his then-physical condition. This evidence weighs heavily against the claim. In addition, a VA medical examiner has determined that coronary atherosclerosis with prior myocardial infarction and hypertension did not manifest in service and are not otherwise etiologically related to service. The examiner's opinion is competent and persuasive, as it was based on his medical experience and expertise as a board-certified internist, his review of medical literature, and a complete review of the Veteran's entire claim file. The opinion was also supported with a clear and well-reasoned rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); see also Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (Factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). There is no other competent medical opinion to the contrary. The criteria to establish service connection for coronary sclerosis or hypertensive arteriosclerotic heart disease have not been met on a direct basis. 

The Board also finds no basis upon which to presume that the Veteran's heart disease which caused his death is of service origin. See 38 C.F.R. §§ 3.307, 3.309 (2012). The VA examiner has provided an opinion that the Veteran's severe coronary atherosclerosis was not initially manifested within a year of service discharge. This medical opinion is considered persuasive for the reasons previously discussed. There also is no evidence in the record to show hypertension manifested within a year after the Veteran's separation from service.

The Board has considered the appellant's assertion that the Veteran suffered a heart attack (i.e., a myocardial infarction) in December 1969, which is within one year of service discharge. However, the earliest medical evidence of a myocardial infarction in this case, a condition which a lay person is not competent to identify, is the 1985 autopsy report. The autopsy report was created nearly 16 years after the Veteran's separation from service, and only refers to a remote myocardial infarction. 

Even if the Board were to accept the appellant's testimony that the Veteran suffered a myocardial infarction within a year of service, the weight of the evidence does not conclusively show that a myocardial infarction became manifest to a compensable degree for VA purposes within a year of service discharge. See 38 C.F.R. § 3.307, 3.309. 

Pursuant to the rating criteria for diseases of the heart, myocardial infarction is rated under Diagnostic Code (DC) 7006. See 38 C.F.R. § 4.104. Compensable disability ratings under DC 7006 are warranted when the evidentiary record shows a history of documented myocardial infarction resulting, in pertinent part, of either (1) workload of greater than 7 metabolic equivalent (MET) but not greater than 10 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope, or (2) continuous medication required for a 10 percent disability rating. In this case, the evidence of record does not reveal a history of a documented myocardial infarction meeting the criteria for a minimum compensable rating within a year of service discharge. As the record reflects, medical records from the hospital at which the Veteran was reportedly treated in 1969 have been destroyed. Also, the private cardiologist who reportedly treated the Veteran in 1969 has indicated he has no records to provide and did not otherwise provide a written statement indicating the Veteran suffered a heart attack in 1969.

Service connection for the cause of the Veteran's death on a presumptive basis due to herbicide exposure in Vietnam is not warranted. See 38 C.F.R. §§ 3.307(a)(6), 3.309(e) (2012). The Veteran's service was during the Vietnam era. However, his DD Form 214 does not show service in the Republic of Vietnam or in the Korea DMZ. There is no indication, nor does the appellant assert, that he had such service. 

Finally, the preponderance of the evidence is against the appellant's contention that the Veteran's service-connected acute viral hepatitis contributed substantially or materially; combined to cause death; or aided or lent assistance to the Veteran's death. Acute viral hepatitis is not noted on the death certificate as having caused or substantially or materially contributed to his death. It is also not noted as a significant condition contributing to death, and is not otherwise shown by competent medical evidence to have caused or materially contributed to his death. 

The Board finds the death certificate and autopsy report are highly probative in this regard. Moreover, the VA examiner opined that it is far less likely than not that the Veteran's service-connected acute viral hepatitis caused or contributed to his death. This medical opinion is considered persuasive as it was based on the examiner's medical experience and expertise and a review of the Veteran's history. The opinion was also supported with a clear and well-reasoned rationale. There is no other competent and probative medical opinion to the contrary. There also is no persuasive medical evidence showing that the Veteran's service-connected hepatitis rendered him materially less capable of resisting the effects of other disease, such as coronary atherosclerosis, thereby hastening his death. 38 C.F.R. § 3.312(b). 

The appellant's contentions as to the Veteran's cause of death, based upon her own beliefs and her familiarity with his medical history, have been considered. Indeed, the Federal Circuit has held that lay evidence is one type of evidence that must be considered, and may be competent to establish medical etiology or nexus. See generally Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). The Board, however, retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). This would include weighing medical evidence against lay statements. 

In the instant case, the question of a causal relationship between the Veteran's service-connected acute viral hepatitis and his coronary sclerosis and hypertensive arteriosclerotic heart disease (and between the coronary sclerosis and hypertensive arteriosclerotic heart disease and his military service) are not simple medical questions that the appellant is competent to render an opinion on. See Woelhaert v. Nicholson, 21 Vet. App. 456 (2007)(although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 

Rather, the matters at hand involve complex medical assessments that require medical expertise. Such matters falls outside the realm of common knowledge of a lay person, that is, the diagnosis and etiology cannot be determined based on mere personal observation, which comes through sensory perception. And it is not argued or shown that the appellant is otherwise qualified through specialized education, training, or experience to make medical diagnoses or present opinions regarding complex medical issues. For these reasons, the appellant's lay opinion is not competent evidence of a causal relationship or nexus between the Veteran's fatal heart conditions and acute viral hepatitis, or the fatal heart conditions and his military service.

Additionally, the Board acknowledges that the appellant disputes that the Veteran was a heavy smoker in his 20's and that his family had a history of heart problems. Nonetheless, the objective evidence of record does not support the appellant's assertions. Contemporaneous service treatment records document the Veteran's history of smoking three packs a cigarettes per day, and the Veteran, himself, recorded that his father had heart trouble and died at the age of 45 due to a heart attack. Also, there is no evidence to support the appellant's assertion that VA incorrectly treated the Veteran for hepatitis when they should have treated him for chest pains and high blood pressure. The objective medical reports establish that at that time the Veteran's chest pains were related to his hepatitis. Evidence that VA "turned a blind eye and . . . found him [ineligible] for treatment" is not present. As such, the appellant's lay assertions in this regard are of no probative value and no further assessment in this regard is warranted.

The Board has also considered the articles the appellant submitted that discuss an association between hepatitis and an increased risk of cardiovascular disease. However, the Court has consistently held that medical statement and/or treatise evidence that was too generic and inconclusive as to the specific facts in a case was insufficient to establish causal link. See Sacks v. West, 11 Vet. App. 314, 316-17 (1998); Wallin v. West, 11 Vet. App. 509, 514 (1998); Mattern v. West, 12 Vet. App. 222, 228 (1999). As the articles submitted do not specifically relate to the particular facts and circumstances surrounding the Veteran's case and were not accompanied by a medical opinion tailored specifically to the case at hand, they are insufficient to establish an etiological nexus between the Veteran's fatal heart conditions and his service-connected acute viral hepatitis. 

As the fatal heart condition that directly caused the Veteran's death is not attributable to service, and as the preponderance of the evidence is against finding that the Veteran's service-connected disability caused or materially contributed to his death; service connection for the cause of death must be denied.

In reaching this determination, the Board does not wish in any way to diminish the Veteran's honorable military service. Although the Board is sympathetic to the appellant's claim, because the preponderance of the competent and probative evidence is against a grant of service connection for the cause of the Veteran's death, the Board it is without authority to grant this claim on an equitable basis, and instead is constrained to follow the specific provisions of law. See 38 U.S.C.A. § 7104 (West 2002); Taylor v. West, 11 Vet. App. 436, 440-41 (1998); Harvey v. Brown, 6 Vet. App. 416, 425 (1994). 


ORDER

Service connection for the cause of the Veteran's death is denied.



____________________________________________
C. CRAWFORD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs