http://www.va.gov/vetapp16/Files4/1634343.txt

Citation Nr: 1634343 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-21 458 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania

THE ISSUES

1. Entitlement to separate disability ratings for service-connected obstructive sleep apnea.

2. Entitlement to a compensable initial disability rating for sinusitis.

3. Entitlement to an initial disability rating in excess of 10 percent for positional vertigo.

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

D.S. Lee, Counsel

INTRODUCTION

The Veteran served on active duty in the United States Army from April 1986 through June 2009.

This case comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in November 2009 and in March 2010 by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

Testimony was received from the Veteran during a July 2014 video conference hearing. A transcript of that testimony is associated with the claims file.

In a November 2014 decision, the Board declined to assign separate disability ratings for the Veteran's service-connected obstructive sleep apnea and asthma. To the extent that the Veteran's claim appears to include a claim for an increased disability rating for obstructive sleep apnea and asthma, rated currently as 50 percent disabling, the Board also declined to award a higher disability rating.

The Veteran subsequently appealed the adverse November 2014 Board decision to the United States Court of Appeals for Veterans Claims (Court). In May 2016, counsel for the Veteran and the VA Secretary (the parties) filed a Joint Motion for Remand in which they argued that the November 2014 Board decision should be set aside. The parties agreed that the Board identified correctly that 38 C.F.R. § 4.96 precludes VA from awarding separate disability ratings for asthma and obstructive sleep apnea. Still, the parties asserted, the Board misapplied that regulation because it failed to identify the predominant disability, and also, failed to consider whether a higher disability rating was warranted under the rating criteria for the predominant disability. The Court granted the parties' motion in a May 2016 order and set aside the November 2014 Board decision. The matter now returns to the Board for action consistent with the terms of the parties' motion.

The issues of the Veteran's entitlement to service connection for right lower extremity radiculopathy and left lower extremity radiculopathy, and, an increased disability rating for lumbosacaral strain with left-sided lumbar radiculopathy in the L5-S1 nerve root distribution have been raised by the record in a July 2016 VA Form 21-526EZ formal claim, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

The issues of the Veteran's entitlement to a compensable initial disability rating for sinusitis and an initial disability rating in excess of 10 percent for positional vertigo are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.

FINDINGS OF FACT

1. Service connection is in effect for the Veteran for obstructive sleep apnea and asthma.

2. Disabilities due to obstructive sleep apnea are rated in accordance with the criteria under 38 C.F.R. § 4.97, Diagnostic Code (DC) 6847, and, disabilities due to asthma are rated under DC 6602.

3. The Veteran's obstructive sleep apnea and asthma are rated under a single 50 percent disability rating that is assigned pursuant to the criteria under DC 6847.

4. The controlling laws and regulations do not permit the assignment of separate disability ratings for disabilities that are rated under DC 6602 and DC 6847.

5. The Veteran's asthma is the predominant respiratory disability.

6. The Veteran has been able to demonstrate pulmonary function that includes FEV-1 performance that is no less than 91 percent of the predicted value after medication, and FEV-1/FVC performance that is no less than 85 percent of predicted value after taking medication; however, he has required intermittent courses of systemic corticosteroids since December 5, 2015.

CONCLUSIONS OF LAW

1. Separate disability ratings for obstructive sleep apnea and asthma are not warranted. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.14, 4.96, 4.97, Diagnostic Codes 6602 & 6847 (2015).

2. The criteria for an initial disability rating in excess of 50 percent for obstructive sleep apnea with asthma are neither met nor approximated prior to December 5, 2015. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.96, 4.97, Diagnostic Codes 6602 and 6847 (2015).

3. The criteria for a 60 percent disability rating, and no higher, are met from December 5, 2015. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.96, 4.97, Diagnostic Codes 6602 and 6847 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose certain obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

The United States Court of Appeals for Veterans' Claims (Court) has held that the statutory and regulatory provisions pertaining to VA's duty to notify and to assist do not apply to a claim if resolution of that claim is based on statutory interpretation, rather than consideration of the factual evidence. See Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001).

The question before the Board is whether the Veteran is entitled to separate disability ratings for service-connected obstructive sleep apnea and asthma. In the present case, the facts are not in dispute. Moreover, resolution of the issue on appeal is dependent wholly on interpretation of the controlling VA statutes and regulations. Accordingly, VA is not under any notification or assistance duties in this case. See 38 U.S.C.A. § 5103A; Wensch v. Principi, 15 Vet. App. 362, 368 (2001) (compliance with the VCAA is not required if no reasonable possibility exists that any notice or assistance would aid the appellant in substantiating the claim). For this reason, no further development under the VCAA is warranted. See Mason v. Principi, 16 Vet. App. 129, 132 (2002); see also Livesay v. Principi, 15 Vet. App. 165 (2001) (en banc) (holding that the VCAA is not applicable where it could not affect a pending matter and could have no application as a matter of law); Sabonis v. Brown, 6 Vet. App. 426, 429-30 (1994) (where the operation of law is dispositive, the appeal must be terminated because there is no entitlement under the law to the benefit sought).

Furthermore, to the extent the Board may be in error as to finding that VCAA does not apply, the Board notes further that this appeal arose from a rating decision that granted service connection and assigned a disability rating and effective date for the award. Thus, statutory notice has served its purpose, and its application was no longer required. Additional VCAA notice is not required concerning the "downstream" initial rating and effective date elements of the claim. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). VA's General Counsel has clarified that no additional VCAA notice is required for a downstream issue, including regarding the initial rating and effective date, and that a court decision suggesting otherwise is not binding precedent. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). Instead of issuing an additional VCAA notice in this situation, the provisions of 38 U.S.C.A. § 7105(d) require VA to issue a statement of the case (SOC) if the disagreement is not resolved. Since the RO issued an SOC addressing the downstream claim, no further notice is required. See Goodwin v. Peake, 22 Vet. App. 128 2008); Huston v. Principi, 17 Vet. App. 195 (2003).

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the Veteran's claim. The Veteran's claims submissions, lay statements, identified and relevant private treatment records, and Board hearing transcript are associated with the claims file.

The Veteran was afforded VA examinations of his sleep apnea and asthma in April 2009 and October 2009 respectively. Notably, repeated efforts made by VA since 2015 to arrange the Veteran to undergo new VA examinations of those disabilities have been frustrated due to the Veteran's ongoing unavailability for those examinations. In that regard, the Veteran and his spouse have advised VA that the Veteran's occupation requires him to be overseas for long periods of time. Indeed, in his most recent July 2016 correspondence, the Veteran notified VA that his contract to work overseas had been extended through June 2018. In lieu of new VA examinations, the Veteran has provided disability benefits questionnaires (DBQs) completed by his private physicians regarding his asthma in December 2015.

The foregoing VA examinations and DBQs, considered along with the other evidence of record, are fully adequate for the purposes of determining the symptoms and manifestations associated with the Veteran's sleep apnea and asthma, and, the severity of any associated impairment and disability. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

II. Entitlement to Separate Disability Ratings for
Obstructive Sleep Apnea and Asthma

By way of history, the Veteran's claim for service connection for sleep apnea was received by VA in February 2009. That claim was granted by the RO in a May 2009 rating decision, effective from July 2, 2009, with an assigned 50 percent initial disability rating pursuant to the criteria under 38 C.F.R. § 4.97, DC 6847. A subsequent November 2009 rating decision awarded an earlier effective date of July 1, 2009.

A separate claim for service connection for asthma was received from the Veteran in September 2009. In a November 2009 rating decision, the Philadelphia RO granted that claim, effective from July 1, 2009. Apparently citing 38 C.F.R. § 4.96(a), the RO did not assign a new and separate disability rating for the Veteran's asthma, but rather, rated the newly service-connected asthma together with the previously service-connected obstructive sleep apnea, via a single 50 percent disability rating assigned pursuant to DC 6847.

As noted above, the Veteran argues on appeal that he is entitled to separate disability ratings for his service-connected asthma and sleep apnea. The Veteran's primary arguments and assertions are expressed in his November 2009 NOD and July 2014 hearing testimony.

First, the Veteran acknowledges that 38 C.F.R. § 4.96(a) states that disabilities rated under DCs 6600 through 6817 and disabilities rated under DCs 6822 through 6847 are not to be combined. He asserts, however, that the cited regulation expresses those conditions in the disjunctive, and hence, appears to argue that a plain reading of 38 C.F.R. § 4.96(a) does not prohibit the assignment of separate disability ratings where one disability is rated pursuant to a criteria ranging within DCs 6600 through 6817 and another disability rated under criteria ranging within DCs 6822 through 6847.

The Veteran also argues that the manifestations of sleep apnea and asthma are not duplicative or overlapping; hence, he appears to be arguing that the assignment of separate disability ratings for each would not constitute "pyramiding," which is forbidden under 38 C.F.R. § 4.14. In that regard, the Veteran makes the distinction that sleep apnea is a caused by obstructive factors, results in disruption of his breathing during sleep, and is alleviated by use of a CPAP machine; whereas his asthma results from exposure to allergens, irritants, and physical exertion, thus resulting in a contraction of the bronchi, and is treated by inhalers and anti-inflammatory medications. In sum, the Veteran appears to be arguing that since the two disabilities are the result of distinct medical etiologies and present symptoms that do not overlap, he is entitled to separate disability ratings for each disability.

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 38 C.F.R. § 4.96 states, "[r]atings under diagnostic codes 6600 through 6817 and 6822 through 6847 will not be combined with each other." The regulatory language continues that, in instances where there are two disabilities falling under the foregoing restriction, "[a] single rating will be assigned under the diagnostic code which reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation." 38 C.F.R. § 4.96(a) (emphasis added).

In addressing the Veteran's interpretation of this regulatory provision, and which diagnostic code ratings may not be combined with other diagnostic code ratings, the Board notes that absent an expressly defined term within a statute, "a fundamental canon of statutory construction is that when interpreting a statute, the words of a statute are given 'their ordinary, contemporary, common meaning.'" See Gordon v. Nicholson, 21 Vet. App. 270, 277 (2007). The canons of statutory construction apply to regulations as well as statutes. See Smith (William) v. Brown, 35 F.3d 1516, 1523 (Fed. Cir. 1994).

Mindful of the foregoing, as highlighted by the Board in its emphasis of the word "and" as used in the language of 38 C.F.R. § 4.96(a), the regulation actually states in the conjunctive that, "[r]atings under diagnostic codes 6600 through 6817 and 6822 through 6847 will not be combined with each other." Hence, the Veteran's reading that the regulation expresses those conditions in the disjunctive is mistaken. Indeed, a plain reading of the language under 38 C.F.R. § 4.96(a) gives no indication of any alteration or limitation of the express language quoted above. Under the circumstances, the Board sees no merit in the Veteran's assertion that the conditions expressed under 38 C.F.R. § 4.96(a) are expressed in the disjunctive.

Careful analysis of the language of 38 C.F.R. § 4.96(a) and the rating criteria of Diagnostic Codes 6600 through 6847 reveals that in stating that "[r]atings under diagnostic codes 6600 through 6817 and 6822 through 6847 will not be combined with each other," VA did not intend to prohibit the assignment of separate disability ratings for conditions that are each rated under Diagnostic Codes 6600 through 6817, and, are each rated under 6822 through 6847, as the Veteran appears to suggest. The simple explanation for the reason that VA did not state more simply in 38 C.F.R. § 4.96(a) that ratings under Diagnostic Codes 6600 through 6847 may not be combined is that the diagnostic codes excluded in the phrase "[r]atings under diagnostic codes 6600 through 6817 and 6822 through 6847" are not necessarily manifested by lung or pleural involvement. In such cases, the assignment of separate evaluations for a disability rated under one of the excluded diagnostic codes and a disability rated under 6600 through 6817 or 6822 through 6847, would not amount to impermissible pyramiding. See C.F.R. § 4.14 (2014) (noting that the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a veteran's service-connected disability); Schedule for Rating Disabilities; Respiratory System, 61 Fed. Reg. 46,720, 46,727 (Sept. 5, 1996) (codified at 38 C.F.R. § 4.97). As both asthma and obstructive sleep apnea are both necessarily manifested by lung or pleural involvement, separate ratings are prohibited by 38 C.F.R. § 4.96(a). 

To the extent that the Veteran has asserted that the assignment of separate disability ratings under Diagnostic Code 6602 and 6847 would not amount to pyramiding because obstructive sleep apnea and asthma present with distinct manifestations, such argument is unavailing. The Board recognizes that the evidence of record supports a finding that sleep apnea and asthma present distinct manifestations. That notwithstanding, the Board is bound by 38 C.F.R. § 4.96(a), which specifically prohibits the assignment of separate evaluations for asthma and obstructive sleep apnea.

The Board is sympathetic to the Veteran's assertions. Nonetheless, given the binding nature of the applicable statutory and regulatory provisions recited above, the Board has no option but to conclude that separate disability ratings for the Veteran's obstructive sleep apnea and asthma may not be assigned. In that regard the Board does not have the authority to grant the Veteran's claim on an equitable basis, and instead is constrained to follow the specific provisions of the controlling law and regulations. See 38 U.S.C.A. § 7104 (West 2002); Taylor v. West, 11 Vet. App. 436, 440-41 (1998); Harvey v. Brown, 6 Vet. App. 416, 425 (1994). As the law is dispositive, the claim must be denied because of the lack of legal entitlement under the law. Sabonis v. Brown, 6 Vet. App. 426, 429-30 (1994).

38 C.F.R. § 4.96 instructs that, although separate disability ratings are forbidden, VA must assign a single disability rating under the diagnostic code which reflects the predominant disability. As mentioned above, the Veteran has asserted that his sleep apnea is being alleviated by use of a CPAP machine while symptoms associated with his asthma was being managed by multiple medications. Review of the medical evidence in the record indicates that the Veteran has not required any ongoing evaluation, monitoring, or treatment related to his sleep apnea. In contrast, however, the records show that the Veteran has been treated and followed for various asthma-related symptoms. In view of the nature of the physical complaints voiced by the Veteran during treatment and the frequency of treatment for asthma, the Board concludes that asthma is the Veteran's predominant respiratory disability. Accordingly, the Board will consider whether a higher disability rating is warranted based on the severity of the Veteran's asthma.

DC 6602, which are the criteria used for rating asthma disabilities, provides for a 60 percent disability rating where bronchial asthma has been productive of pulmonary function which includes FEV-1 values that are 40 to 55 percent of predicted values, or; FEV-1/FVC values that are 40 to 55 percent, or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. A maximum 100 percent disability rating is assigned where asthma has been productive of FEV-1 values that are less than 40 percent of predicted values, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high does corticosteroids or immune-suppressive medications.

Under 38 C.F.R. § 4.96(d)(4), post-bronchodilator studies are required when pulmonary function tests are conducted for disability evaluation purposes except when the results of pre-bronchodilator pulmonary function tests are normal or when the examiner determines that post-bronchodilator studies should not be done and states why.

Private treatment records from Dr. E.W.B. include a September 2009 treatment note which reflects that the Veteran was complaining of intermittent chest tightness, but without any overt wheezing. The record shows also that the Veteran was treating his symptoms with daily doses of Singulair and Ventolin, neither of which are corticosteroids or immunosuppressives.

During an October 2009 VA examination, the Veteran reported that he had a productive and persistent cough that was worsened by seasonal allergies during the summer and fall seasons. He denied becoming out of breath while walking normally, but reported that he became short of breath after climbing two flights of stairs. He reported that he was medicating with an Asmanex inhaler every morning and an Albuterol inhaler taken twice per day. He denied ever requiring oxygen. A physical examination conducted at that time revealed unlabored respiration and clear lungs, albeit with harsh breath sounds at the bilateral bases. Pulmonary function tests were performed and revealed FEV-1 that was 88 percent of predicted value prior to medication, and 91 percent of predicted value after taking Albuterol. FEV-1/FVC was 83 percent of predicted value prior to medication, and 85 percent of predicted value after Albuterol. Overall, the examiner characterized the Veteran's asthma as being "mild."

Private pulmonary function tests conducted in August 2015 by Dr. M.A. revealed FEV1/FVC performance that was 81 percent of predicted value prior to bronchodilation and 108 percent of predicted value after bronchodilation. FEV1 performance was 52 percent of predicted value prior to bronchodilation and 95 percent of predicted value after bronchodilation.

A December 2015 DBQ completed by Dr. M.A. reflects that the Veteran's asthma-related symptoms included coughing, wheezing, chest tightness, shortness of breath, and chest pain that was worsened by exercise. Dr. M.A. noted that the Veteran had 10 asthma exacerbations over the preceding 12 month period; however, that the Veteran had not had any attacks productive of respiratory failure. According to Dr. M.A., the Veteran was being treated with intermittent courses of systemic corticosteroids and stated that overall the Veteran had undergone three such courses of treatment over the previous 12 months. Finally, Dr. M.A. states that he was sometimes required to take sick leave from work because of breathing problems. He does not elaborate as to the frequency with which the Veteran was required to take sick leave, nor does he report that the Veteran has any impairment of daily activities or occupational functioning.

The evidence shows that the Veteran's asthma was manifested by persistent cough, intermittent chest tightness, and shortness of breath after activity such as using stairs. Those symptoms were managed by non-corticosteroid and non-immunosuppressive medications. Pulmonary function tests conducted in October 2001 and August 2015 indicate post-bronchodilator FEV-1 and FEV-1/FVC performance that were well above that contemplated for a 60 percent or a 100 percent disability rating under DC 6602.

Still, the December 2015 DBQ completed by Dr. M.A. expresses that the Veteran had undergone three courses of corticosteroid treatment over the preceding 12 month period. Under the circumstances, the evidence shows that the Veteran has required "intermittent" courses of systemic corticosteroids as it is defined under the criteria for a 60 percent disability rating. Accordingly, the Board finds that the criteria for a 60 percent disability rating are met, effective from December 5, 2015, the date on which the DBQ was completed.

The potential application of various provisions of Title 38 Code of Federal Regulations have been considered, whether or not they were raised by the Veteran. Schafrath, 1 Vet. App. 589. In doing so, based on the predominant symptoms shown in the record, the Board does not see other rating criteria that may be applied to the Veteran's obstructive sleep apnea with asthma.

The Board has also considered the provisions under 38 C.F.R. § 3.321(b)(1), which govern the assignment of extra-schedular disability ratings. However, the Board finds that the record does not show that the Veteran's disability is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2015).

In Thun v. Peake, 22 Vet App 111 (2008), the United States Court of Appeals for Veterans Claims (Court) identified a three-step inquiry for determining whether an extra-schedular disability rating is warranted. First, the Board must determine whether the evidence presents such a disability picture that is so exceptional that the available schedular disability ratings for that service-connected disability are inadequate. Second, if the schedular disability rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, in order to accord justice, the veteran's disability picture requires the assignment of an extra-schedular rating.

Applying the first prong under Thun, the Board finds that the evidence in this case does not show that the disability picture associated with the Veteran's sleep apnea and asthma is so exceptional that the contemplated schedular rating is inadequate. In that regard, there is no indication in the record that the Veteran's disability has necessitated frequent in-patient treatment or surgery, nor is there evidence that the disability has interfered to a significant degree with the Veteran's ability to perform ordinary activities or occupational duties. As discussed above, higher disability ratings are available under the applicable rating codes; however, the Veteran's disability has not been productive of the symptoms, manifestations, or functional loss required for higher disability ratings under any of the applicable rating criteria. By virtue of the same, it cannot be said that the available schedular rating for the Veteran's disability is inadequate. Based on the foregoing, the Board finds that the requirements for consideration of an extra-schedular disability rating for the Veteran's sleep apnea and asthma are not met. Thun, 22 Vet. App. 111; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

The Board also acknowledges that in Rice v. Shinseki, 22 Vet. App. 447 (2009) the Court of Appeals for Veterans Claims (Court) held that a claim for TDIU, either expressly raised by the Veteran or reasonably raised by the record, involves an attempt to obtain an appropriate rating for a disability and is therefore part of the claim for an increased rating. Nonetheless, the evidence in this case does not raise a TDIU claim, either expressly or implicitly. Indeed, the evidence shows that the Veteran has remained employed. Under the circumstances, the Board will not endeavor to consider entitlement to TDIU in connection with this appeal. 

In sum, the Board finds that the Veteran is not entitled to an initial disability rating higher than 50 percent for obstructive sleep apnea with asthma prior to December 5, 2015; however, is entitled to a 60 percent disability rating, and no greater, from December 5, 2015. To that extent, this appeal is granted.

ORDER

Separate disability ratings for obstructive sleep apnea and asthma are denied.

An initial disability rating in excess of 50 percent for obstructive sleep apnea with asthma prior to December 5, 2015 is denied.

An increased disability rating of 60 percent, and no higher, for obstructive sleep apnea with asthma from December 5, 2015 is granted, subject to the laws and regulations governing the payment of VA monetary benefits.

REMAND

Regarding the issue of the Veteran's entitlement to a compensable initial disability rating for sinusitis, service connection for sinusitis was granted in a February 2014 rating decision. A non-compensable initial disability rating was assigned. In a July 2014 VA Form 9, the Veteran expressed his disagreement with the assigned initial disability rating. The Board construes that submission as the Veteran's Notice of Disagreement. To date, the Veteran has yet to be provided a Statement of the Case (SOC) that addresses the sinusitis issue.

In instances where the Veteran has filed a timely NOD and VA has not issued an SOC addressing the issues preserved for appeal in the NOD, the Board is required to remand the issue to the AOJ so that the issues being sought for appeal may be readjudicated by the AOJ, and if the RO's disposition remains unfavorable, so that an SOC may be issued to the Veteran. Manlincon v. West, 12 Vet. App. 238 (1999). Accordingly, on remand, the AOJ should readjudicate the issues of the Veteran's entitlement to a compensable initial disability rating for sinusitis, and if adjudicated unfavorably, provide the Veteran with an SOC as to that issue.

Concerning the issue of the Veteran's entitlement to an initial disability rating in excess of 10 percent for positional vertigo, the Veteran's vertigo disability has been rated under 38 C.F.R. § 4.87, DC 6204. Those criteria instruct that associated hearing impairment or suppuration must be rated separately and combined.

Subject to the foregoing criteria, the Board notes that the Veteran reported symptoms of hearing loss and tinnitus, in addition to symptoms of vertigo and imbalance, during a January 2010 VA examination. The Veteran did not, however, undergo an audiological examination to confirm the presence of hearing loss and tinnitus or to determine the severity thereof. Also, the VA examiner did not provide any opinion as to whether the Veteran's hearing loss and tinnitus are associated with the Veteran's positional vertigo. Similarly, an August 2014 DBQ does not address the Veteran's hearing loss and tinnitus.

As noted above, VA has made repeated attempts to schedule the Veteran for VA examinations of his various disabilities. Such attempts have been unsuccessful because the Veteran works primarily overseas. Indeed, recent correspondence from the Veteran advises VA that his contract to work overseas is extended through June 2018. Under the circumstances, the Veteran should be provided DBQs for his vertigo, hearing loss, and tinnitus. The DBQs should be completed by the physician who has been treating the Veteran for his vertigo. The Veteran's treating physician should be asked to identify the symptoms and manifestations associated with the Veteran's positional vertigo, and in particular, be asked to comment on whether the Veteran has hearing loss and tinnitus, and if so, whether those are associated with the Veteran's positional vertigo disorder.

Also, in order to ensure that the most complete and up-to-date evidence has been associated with the claims file, the Veteran should also be asked to identify any private or VA treatment providers who have rendered treatment for his sinusitis and positional vertigo since December 2015. VA must then also make efforts to obtain the records for treatment identified by the Veteran. 38 C.F.R. § 3.159.

Accordingly, the case is REMANDED for the following action:

1. The Veteran's claim for a compensable initial disability rating for sinusitis should be readjudicated. If the determination remains adverse to the Veteran, he and his representative should be furnished with a SOC and be given an opportunity to respond.

The Veteran is advised that a timely substantive appeal will be necessary to perfect his appeal to the Board concerning the above issues. 38 C.F.R. § 20.302(b) (2015).

2. The Veteran should be asked whether he has additional evidence pertaining to his claims since December 2015, and if so, assist him in obtaining it. Relevant VA treatment records dated from December 2015 through the present should be associated with the record.

3. After the foregoing development has been performed to the extent possible, provide the Veteran with DBQs concerning his positional vertigo, hearing loss, and tinnitus. The Veteran should be asked to have those forms completed by his treating physician(s).

The Veteran's treating physician(s) should be asked to identify the symptoms and manifestations associated with the Veteran's positional vertigo, hearing loss, and tinnitus, to include data from audiometric and speech discrimination testing of the Veteran's hearing loss. The treating physician should also identify any loss of daily or occupational function that is associated with the positional vertigo, hearing loss, and tinnitus.

Also, the treating physician should offer an opinion as to whether the Veteran's hearing loss and tinnitus are caused by, aggravated by, or are otherwise associated with the Veteran's service-connected positional vertigo disability.

If the examiner is unable to provide any of the requested opinions without resorting to speculation, he or she should explain the reasons for that inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion.

A complete rationale should be given for all opinions and conclusions. Such rationale must include a discussion of all relevant findings from the examination and applicable medical principles. All findings, conclusions, and supporting rationale should be expressed in the report.

4. After completion of the above development, the issue of the Veteran's entitlement to an initial disability rating in excess of 10 percent for positional vertigo should be readjudicated. If the determination remains adverse to the Veteran, he should be furnished with a supplemental SOC and be given an opportunity to respond.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs