**James R. HARVEY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1398.

United States Court of Veterans Appeals.

April 21, 1994.

James R. Harvey, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Karen P. Galla, Washington, DC, were on the brief, for the appellee.

Before MANKIN, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant veteran, James R. Harvey, appeals a September 21, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying him basic eligibility for educational assistance benefits under chapter 30 of title 38, United States Code, the "All Volunteer Force Educational Assistance Program" [hereinafter "GI Bill of 1984" or "New GI Bill" or "NGIB"]. The veteran has filed an informal brief urging the Court to reverse the Board decision. The Secretary has filed a brief requesting summary affirmance. For the reasons set forth below, the Court will affirm the decision of the Board.

## I. Background

The veteran enlisted in the Army under the Delayed Entry Program (DEP) on November 8, 1985, by completing and signing a form entitled "Enlistment/Reenlistment Document[,] Armed Forces of the United States". R. at 69–71. The enlistment form contains alphabetical sections A. through H. Section B., "Agreements", states in part (with the material underlined that was filled in on the form):

8. I am enlisting/reenlisting in the United States (*list branch of service*) *Army Reserve* this date for *8* years and ___ weeks beginning in pay grade *E–1*. The additional details of my enlistment/reenlistment are in Section C. and Annex(es) *A*.

a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP): I understand that I will be ordered to active duty as a reservist unless I report to the place shown in item 4 above by (*list date (YYMMDD )*) *0700 86 JAN 30* for enlistment in the Regular component of the United States (*list branch of service* ) *ARMY* for not less than *4* years and __ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address[.]

b. Remarks: (*if none, so state.*) *NONE*

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.

R. at 69. The record contains no evidence that an annex was attached to the enlistment form. Section D., "Certification and Acceptance", states in part:

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (*if none, X "NONE" and initial* )

R. at 70. The form indicates that the veteran checked the box labeled "NONE" and initialed his checkmark. *Ibid.*

Sections F., "Discharge From Delayed Entry/Enlistment Program"; G., "Approval and Acceptance by Service Representative"; and H., "Confirmation of Enlistment or Reenlistment", of the veteran's Enlistment/Reenlistment Document were completed and signed by the veteran on January 30, 1986. Section F. indicates that the veteran was discharged from the DEP and enlisted in the Regular Component of the Army on January 30, 1986. R. at 71. Section F. states (with the material underlined filled in): "No changes have been made to my enlistment options OR if changes were made they are recorded on Annex(es) *B & C* which replace(s) Annex(es) *A*. *Ibid.* The record contains no indication of any annex to this portion of the veteran's Enlistment/Reenlistment Document.

On February 3, 1986, four days after his entrance into active duty in the Army, the veteran signed and dated a DD Form 2366, "Veteran's Educational Assistance Act of 1984 ([New] GI Bill)". The form contained a "Statement of Understanding" which explained that the veteran was "eligible for the GI Bill of 1984 and [would be] automatically enrolled." R. at 60. The veteran's signature appears beneath this statement. The form also contains a "Statement of Enrollment", which notes:

a. I understand that if I remain enrolled in the GI Bill of 1984 that $100 per month will be deducted from my basic pay for EACH of the first full 12 months of active duty and WILL NOT BE REFUNDED

b. I must complete three years of service before I am entitled to $300 per month for 36 months ($250 per month for 36 months, if I have a two year obligation)

c. I must complete two years of active duty service and join the Selected Reserve for a minimum four year service agreement before I am entitled to $300 per month for 36 months.

*Ibid.* The veteran's signature appears beneath this statement also. The form further contains a section entitled "Service Unique Education Assistance Options", which noted: "If I remain enrolled in the GI Bill of 1984, I may be eligible for additional educational assistance based on my military specialty and/or years of service as shown below". *Ibid.* An illegible hand-written sentence appears underneath this section. *Ibid.* The

illegible sentence, clarified in a handwritten attachment to DD Form 2366, states: "I understand that I may not become entitled to the new GI Bill and/or the new ACF [Army College Fund] for the same time period of service that I accrue from repayment of eligibility." R. at 59.

In June 1992 testimony to the BVA, the veteran later explained the circumstances surrounding his entry into service and ensuing events, as follows:

> When I enlisted in the Army ... I was in college for a year, and so I had loans accrued from that period. And I wanted the GI bill. So [when] I enlisted, I made sure I had both the loan forgiveness time track and the part of the GI bill all in there.... I wrote letters to the bank ... so I wouldn't have to make payments.... [A]fter I was in for several months, the bank sent me a note saying these loans aren't getting paid. So I had to start [making] some phone calls....

R. at 48.

On January 15, 1987, after he had served almost a year, the Army wrote to the veteran as follows:

> The New GI Bill became effective 1 July 1985. One of the provisions of the new law precludes accruing eligibility for both Loan Repayment and New GI Bill for the same period of service.... Some soldiers who entered active duty between 1 July 1985—31 March 1986 were erroneously offered both the Loan Repayment Program and the New GI Bill. You have been identified as one of those soldiers, and you now must choose an option in accordance with the law.

R. at 53. The letter went on to note that, if the veteran had been promised both the New GI Bill and the Loan Repayment Program, he should have DD Form 2366, "Veteran's Educational Assistance Act of 1984", and DD Form 2057-2, "Loan Forgiveness Statement of Understanding". Both of these forms are of record. R. at 60, 55. The letter detailed the following four options for a four-year enlistee such as the veteran: (1) receive one year's Loan Repayment and three years' New GI Bill; (2) receive two years' Loan Repayment and two years' New GI Bill (with

basic benefits of $250 per month for 36 months); (3) receive three years' Loan Repayment; or (4) receive three years' New GI Bill. R. at 54.

The veteran later testified, referring to the available options, "I didn't really want [them]. I wanted what I enlisted for. And they said ... [y]ou either take this or you're going to have to request a discharge." R. at 48. In April 1987, the veteran submitted a "Request [for] Separation under Chapter 7, Section 4, Paragraph 7–16 A(1–3) and Paragraph 7–16 B(1) of AR [Army Regulation] 635–200. Defective Enlistment". R. at 72. The request, typed on Department of the Army letterhead, stated:

> [I] request that I be separated from the service under [the] chapter stated above.... I was told by recruiter personnel [that] I could have the New GI Bill and Loan Forgiveness at full benefits and I signed contract options (DD Form 2366 and DD Form 2057-2) to that effect.... If I took the best option offered (2 year New GI Bill) I will lose $1800 ... If I chose the best option offered to me concerning the Loan Forgiveness contract (2 year Loan Repayment) I found ... that I will lose a minimum of $700.... The Army no longer offers me the answer to financing my education. If I were to accept the enclosed agreement I would not meet my goal upon which I enlisted. Therefore, I wish to separate from the service, so I can continue p[u]rsuing my educational plans.

R. at 72–73.

In October 1987, the Army returned the veteran's request without further processing. The Army explained that (1) the veteran's file indicated that he fully understood that he might not have been entitled to the New GI Bill and Loan Repayment benefits for the same period of service (this statement apparently referred to the handwritten insert on the veteran's DD Form 2366, which, as noted above, stated that the veteran understood that he "may not become entitled to the new GI Bill and/or the new ACF for the same time period of service that I accrue from repayment of eligibility.") and (2) he had not completed the form which informed him that

he was not eligible for both the New GI Bill and Loan Repayment Forgiveness by choosing one of the options. R. at 77. A December 1987 "Memorandum For Record", prepared by an Army attorney on the base, clarified the veteran's position on these issues. The memorandum stated:

> [T]he handwritten entry on DD Form 2366 was made at the direction of [a sergeant] at Fort Leonardwood [sic], Missouri.... [The veteran] asked [the sergeant] what the terminology meant since he was confused as to its purpose.... [The sergeant] responded that, 'It was needed for the system in order to process it.' [The veteran] still failed to understand the relevancy or significance of the entry he was directed to make.... [but] he obeyed the direction and made the written entry without understanding its meaning.... [H]e was told in words that it was just a formality and not a conditional provision.

R. at 78. The memorandum explained the veteran's position as follows:

> [The veteran] did not make the election since neither option offered was the same as his enlistment contract. And, if [he] did elect an option other than the contracted provision, he would in effect be waiving the benefits of the original agreement and would have no basis to claim breach of the original contract.

*Ibid.*

The veteran's request for separation was apparently processed soon thereafter. His DD Form 214, "Certificate of Release or Discharge From Active Duty", shows his separation date as March 17, 1988. R. at 12. The reason for separation is noted as "Unfulfilled Enlistment Commitment", and the separation authority is noted as "AR 635-200, Para __", with the paragraph number left blank.

In May 1991, the veteran applied to a Department of Veterans Affairs (formerly Veterans' Administration) (VA) regional office (RO) for education benefits under the New GI Bill. R. at 13–15. In June 1991, the VARO informed him that his claim for educational assistance was being denied because "the evidence [does] not establish that [you] meet the qualifications required for this ben-

efit." R. at 18. In a June 1991 letter to the RO, the veteran disputed the denial. R. at 19. An undated letter from the RO to the veteran further explained the denial as follows:

> To be eligible for benefits under the [New] G.I. Bill, a veteran must ... complete the initial period of obligated service unless discharged for a service[-]connected disability, for a disability which existed prior to service, a reduction in force, for hardship reasons, or for the convenience of the [G]overnment after serving at least 20 months of a two[-]year obligation or 30 months of a three[-]year obligation.

R. at 23.

In a July 1991 letter to the RO, the veteran requested an explanation as to why his discharge could not be viewed as a hardship case. R. at 27. In an undated reply letter, the RO explained, "[y]our character of discharge and separation reason are determined by the Department of Defense [DOD]", and further suggested that the veteran contact DOD if he felt his discharge certificate was incorrect. In his December 1991 Form 1–9 Appeal to the BVA, the veteran argued that he should be able to receive education benefits because the Army broke its contract with him by not fulfilling its original promise. R. at 38–39.

At a personal hearing before the BVA in June 1992, the veteran testified under oath that when he requested a discharge "no one said, well, look, you know, you're not going to get your benefits or [any]thing else. You know, you better stay in or you won't get your benefits.... So I went ahead and got a discharge." R. at 49. He also testified that immediately after his discharge he had called the VA and was told that he would be able to receive education benefits under the New GI Bill and that "my name was [on the] main frame, and everything was okay." *Ibid.* He reiterated that he should be entitled to "use the New GI bill". He stated: "[M]y basic argument is that when I enlisted I went through these contracts and everything.... [A]nd now because the Army [couldn't] fulfill their end of the contract [to provide the New GI Bill and Loan Repayment Forgive-

ness].... I don't have any ... official benefits or anything". R. at 49.

In a September 21, 1992, decision, the BVA denied the veteran's entitlement to basic eligibility for the New GI Bill, stating:

> In this case, the veteran's DD Form 214 reflects that he was discharged before completing three years of service, so he does not satisfy the eligibility criteria in 38 U.S.C.A. § 3011(a)(1)(A)(i) (West 1991). The Board has also considered whether he might be eligible under 38 U.S.C.A. § 3011(a)(1)(A)(ii) (West 1991). The veteran's DD Form 214 reflects that the reason for his separation was "unfulfilled enlistment commitment," and the separation authority cited was AR 635–200. The claims folder reflects that the veteran was given the opportunity to separate from service when it was discovered that the Army recruiter had misinformed him regarding loan forgiveness and benefits under the new GI bill, and that the veteran relied on those misrepresentations when he decided to enlist. The veteran's initial obligated term of service was four years. He testified that he chose to be separated from service prior to expiration of that term of service when he learned that he had been mislead [sic].... The claims folder also reflects [DOD] data that indicate that the veteran was separated for the convenience of the Government; however, it was not involuntary for the convenience of the [G]overnment due to reduction in force.... [T]he separation for the convenience of the Government occurred prior to completion of 30 months of the veteran's four-year obligated term. Therefore, neither the veteran's length of service nor his reason for separation meet the eligibility criteria in 38 U.S.C.A. § 3011(a)(1)(A) (West 1991); 38 C.F.R. § 21.7042(a) (1991).

R. at 6–7. A timely appeal to this Court followed.

## II. Analysis

The veteran asks the Court to reverse the BVA decision and declare him eligible for NGIB benefits. He claims that he was not informed, prior to discharge, that he would be ineligible for education benefits. He also contends that he was informed by VA immediately after discharge that he was eligible for NGIB benefits. He expresses disagreement with the characterization of his discharge, arguing that if his discharge were viewed as a "hardship" discharge he would be eligible for these benefits. If the Court decides against him, he requests a refund of the $1,200 ($100 per month) which was deducted from his pay during his first year of active duty.

### A. Entitlement to NGIB Educational Assistance

The statutory provision containing eligibility criteria for NGIB educational assistance benefits under chapter 30 provides in pertinent part:

> (a) ... [E]ach individual—
>
> (1) who—
>
>> (A) after June 30, 1985, first becomes a member of the Armed Forces or first enters on active duty as a member of the Armed Forces and—
>>
>>> (i) who (I) serves, as the individuals's [sic] initial obligated period of active duty, at least three years of continuous active duty in the Armed Forces ...; or
>>>
>>> (ii) who serves in the Armed Forces and is discharged or released from active duty ... (I) ... for hardship ...; (II) for the convenience of the Government, ... in the case of an individual who completed not less than 30 months of continuous active duty if the initial obligated period of active duty of the individual was at least three years ...
>>
>> ....
>
> is entitled to basic educational assistance under this chapter.

38 U.S.C. § 3011(a)(1)(A). *See also* 38 C.F.R. § 21.7042 (1993).

Section 2171, "General education loan repayment program", of title 10 of the United States Code, provides:

> (a)(1) Subject to the provisions of this section, the Secretary of Defense may repay—
>
>> (A) any loan made, insured, or guaranteed under part B of title IV of the

Higher Education Act of 1965 (20 U.S.C. 1071 et seq.); or

(B) or any loan made under part E of such title (20 U.S.C. 1087aa et seq.)

Repayment of any such loan shall be made on the basis of each complete year of service performed by the borrower.

(2) The Secretary may repay loans described in paragraph (1) in the case of any person for—

(A) service performed—

(i) as an enlisted member of the Selected Reserve of the Ready Reserve of an armed force; and

(ii) in a reserve component and military specialty specified by the Secretary of Defense; or

(B) service performed on active duty as an enlisted member in a military specialty specified by the Secretary.

10 U.S.C. § 2171(a)(1), (2).

■ "Statutory interpretation begins with the language of the statute." *Texas Instruments v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1180 (Fed.Cir.1993); *see M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed.Cir.1993). And it may very well end with the statutory language when it is clear and unambiguous on its face. *See Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991), *aff'd*, 5 F.3d 1456 (Fed.Cir.1993). This Court held in *Kelley v. Derwinski*, 3 Vet.App. 171, 172 (1992), that section 3011(a) is "clear on its face and capable of being understood" and "should not have additional meaning supplied to it by further interpretation." The basic statutory requisites for entitlement to NGIB benefits are "at least three years of continuous active duty" or "not less than 30 months of continuous active duty" in the case of a discharge for the convenience of the Government. The veteran enlisted in the Army for an initial obligated period of four years and was discharged after having served 25 months and eighteen days; thus, he does not satisfy the length-of-service minimum for either of the eligibility requisites for NGIB benefits. He asks the Court to declare him eligible for these benefits regardless of his statutory ineligibility, but "[n]either the VA nor the Court can extend [NGIB] benefits out of sympathy for a particular veteran." *Kelley, supra.*

Nonetheless, the Court will address the veteran's contention that prior to discharge he was not informed of his resulting ineligibility for education benefits and that immediately after discharge he was informed that he was eligible for NGIB benefits. The Court interprets the veteran's contentions as to lack of advice prior to discharge and misinformation regarding eligibility after discharge as an equitable estoppel claim—that is, that the alleged misinformation and lack of advice on the part of the U.S. Government estops it from denying him entitlement to benefits.

Section 7722(d), "Outreach Services", of title 38 of the United States Code, provides in part:

(d) The Secretary [of Veterans Affairs] shall provide, to the maximum extent possible, aid and assistance (including personal interviews) to members of the Armed Forces, veterans, and eligible dependents ... in the preparation and presentation of claims under laws administered by the Department.

■ In *Smith (Edward F.) v. Derwinski*, 2 Vet.App. 429, 432–33 (1992), this Court concluded that "the plain language of [section 7722(d) ] manifests an explicit congressional intent" to impose an obligation on VA to provide veterans with individualized assistance "to the maximum extent possible" and that the veteran in that case should have been provided with "information he needed in order to decide whether he wished to claim retroactive benefits." *Id.* at 431–32; *see also Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990) (section 7722 [formerly 241] is one of a number of statutes comprising VA obligation to assist the veteran); *Conary v. Derwinski*, 3 Vet.App. 109 (1992) (Steinberg, J., concurring) (pursuant to section 7722(d) Secretary was statutorily obliged to give veterans "the information [they] needed" in order to make timely and effective application for upward adjustment of VA pension benefit based on unreimbursed medical expenses); *cf. Mays v. Brown*, 5 Vet.App. 302, 306 (1993) (where statute provides that Secretary notify veterans of application time limits for VA outpa-

tient dental treatment and Secretary does not provide notification, application time limits do not begin to run); *Hamilton v. Brown,* 4 Vet.App. 528, 544–45 (1993) (en banc) (VA's failure to send, as required by statute, formal application form after informal claim received suspends one-year time limit for filing formal application); *Servello v. Derwinski,* 3 Vet.App. 196, 200 (1992) (same); *Quarles v. Derwinski,* 3 Vet.App. 129, 137 (1992) (same). The *Smith* opinion specifically cautioned that section 7722(d) "is not unlimited in scope ... and requires of the VA only those actions which are reasonable under the circumstances involved". *Smith,* 2 Vet.App. at 432–33. Even under the most generous reading of the statute and our caselaw, VA had no obligation prior to the veteran's discharge to assist him to prepare a claim that he had not indicated to VA that he wanted to make. At most, it is arguable that the veteran should have received from VA "aid and assistance" in the form of accurate information about education benefits eligibility after he, according to his testimony, contacted VA immediately after discharge about NGIB benefits.

In addition, paragraph 2–3a, "Preseparation Services Program (PSSP)", of Army Regulation 635–10 provides in part:

> [A] mandatory briefing for honorably transitioning soldiers [will] be conducted not later than 90 days before transition date.... The briefing will contain the following information—
>
> ....
>
> (8) VA benefits

Accordingly, it is also arguable that the Army had an obligation to inform the veteran before discharge about his basic eligibility or ineligibility for NGIB education benefits.

Where this Court has previously considered estoppel claims, it has either decided the case on other grounds or rejected estoppel outright. In *Smith,* 2 Vet.App. at 434, the Court held that even though VA had failed to satisfy the statutory obligation imposed by section 7722(d), the appropriate remedy in that case was to apply the doctrine of equitable tolling, as iterated in *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and not equitable estoppel. *See also Rosler v. Der-*

*winski,* 1 Vet.App. 241, 246 (1991) (equitable estoppel claim based on misleading advice in BVA letter decided on other grounds); *Elsevier v. Derwinski,* 1 Vet.App. 150, 154–55 (1991) (Secretary not estopped from asserting that appeal untimely where BVA failed to timely inform appellant that his Notice of Appeal should have been filed not with BVA but with the Court); *Fugere v. Derwinski,* 1 Vet.App. 103, 106 (1990) (Secretary's invocation of equitable estoppel doctrine rejected and case decided on other grounds). In *Lozano v. Derwinski,* 1 Vet.App. 184, 185 (1991), this Court considered and denied an estoppel claim involving a veteran who had received mistaken notification that his hearing loss was service connected. The Court stated: "A clerical error cannot be relied upon to invoke an estoppel against the United States for money payments." The *Lozano* opinion relied on *OPM v. Richmond,* 496 U.S. 414, 416–17, 110 S.Ct. 2465, 2467, 110 L.Ed.2d 387 (1990), where the Supreme Court, in a case involving a former federal employee receiving a federal disability pension who had relied on erroneous information provided by the Office of Personnel Management and thereby became ineligible for a statutorily prescribed disability annuity, held that the annuity could not be granted to the pensioner even though he had relied on the erroneous information. The Supreme Court noted that under the Appropriations Clause of the Constitution, Art. I, sec. 9, cl. 7, "payments of money from the Federal Treasury are limited to those authorized by a statute" and that in the pensioner's case "the relevant statute by its terms excludes respondent's claim" for disability annuity. *Richmond,* 496 U.S. at 424, 110 S.Ct. at 2471. The *Smith* panel distinguished *Richmond* from the Supreme Court's *Irwin* opinion, where the doctrine of equitable tolling was applied to a claimant's untimely-filed equal employment opportunity suit, by noting that whereas *Irwin* had involved a question of "whether the government's actions resulted in the failure to file a timely request for ... benefits", *Richmond* had involved a "question of whether the government's actions caused the appellant to fail to satisfy the underlying statu-

tory eligibility requirements for the benefits sought". *Smith,* 2 Vet.App. at 433.

■ The facts of the instant case are similar to those in *Richmond.* Here the veteran claims entitlement to NGIB benefits on the basis of his assertion that information was withheld and/or that erroneous information was provided regarding education benefits. Just as the *Richmond* Court could not provide the pensioner there with the relief he requested, entitlement to a statutorily prescribed disability annuity for which he was ineligible, so here the Court cannot grant the veteran entitlement to statutorily prescribed NGIB benefits because he does not meet the statutory eligibility criteria established by Congress in 38 U.S.C. § 3011(a). *See Richmond,* 496 U.S. at 424, 110 S.Ct. at 2471; *Lozano, supra; see also Petersen v. OPM,* 16 F.3d 422 (Fed.Cir.1993) (unpublished decision) (death beneficiary designation form mistakenly held at VA Medical Center and not "received [at OPM] before [the employee's] death", as required by 5 U.S.C. § 8342(c), prevented payment of death benefits to designee out of U.S. Treasury).

Thus, assuming, but not deciding, that AR 635–10, para. 2–3a(8) and section 7722(d) imposed some obligations upon the Army and VA to provide the veteran with accurate "information" about VA NGIB benefits eligibility before and after his discharge, and even accepting the veteran's testimony that after discharge he was informed by VA via telephone that he was eligible for NGIB benefits, the Court holds that the remedy for breach of such an alleged obligation cannot involve payment of benefits where the statutory eligibility requirements for those benefits are not met.

■ One further theory of relief that should be addressed is the Army's breach of the enlistment contract. Although it seems fairly well settled that common-law contract principles do not apply to some aspects of an enlistment agreement, *see United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977) (where question is breach of enlistment extension bonus agreement, courts should refer to statutes and regulations rather than ordinary contract principles); *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961) ("Common law rules governing private contracts have no place in the area of military pay"), there are cases in which courts have examined enlistment agreements under contract principles. *See Peavy v. Warner,* 493 F.2d 748, 750 (5th Cir.1974) (claim that enlistment extension contract was invalid or was breached decided under traditional notions of contract law); *Johnson v. Chafee,* 469 F.2d 1216, 1220 (9th Cir.1972) (impliedly same); *Shelton v. Brunson,* 465 F.2d 144, 147 (5th Cir.1972) (same); *Helton v. United States,* 532 F.Supp. 813, 824 (S.D.Ga.1982) (same). In any event, the remedy for breach in this case cannot be the relief that the veteran seeks, a direction by the Court that the unauthorized enlistment contract be honored through specific performance, because the veteran is not eligible to receive such benefits under statutory law. As *Richmond* succinctly noted: "[I]t would be most anomalous for a judicial order to require a Government official ... to make an extrastatutory payment of federal funds. It is a federal crime, punishable by fine and imprisonment, for any Government officer or employee to knowingly spend money in excess of that appropriated by Congress." *Richmond,* 496 U.S. at 430, 110 S.Ct. at 2474.

## B. Discharge Characterization

■ The veteran also contends that his discharge should be classified as a "hardship" discharge, a characterization which he believes would entitle him to educational assistance under 38 U.S.C. § 3011(a)(1)(A)(ii)(I). However, any disagreement the veteran may have regarding the assigned discharge classification must be raised with the Army Board for the Correction of Military Records, not VA. *See* 10 U.S.C. § 1552(a)(1) (Secretary of a military department may correct any of his department's military records "to correct an error or remove an injustice"); *Lauginiger v. Brown,* 4 Vet.App. 214, 216 (1993) (veteran must look to the Air Force, not VA, in dispute over whether service records of radiation exposure are complete).

## C. Equitable Relief

■ The veteran further requests the Court, in the event it affirms the BVA deci-

sion and denies eligibility for NGIB benefits, to direct the return of his $1,200 "investment", the amount deducted from his Army pay due to his enrollment in the NGIB during his first year of active duty. Although the veteran asserts that he is entitled to the *return* of the $1,200 deducted during his first year of service, section 3011(b) provides that the pay deducted "shall revert to the [U.S] Treasury and shall not, for purposes of any Federal law, be considered to have been received by or to be within the control of [the] individual." Thus, the veteran cannot characterize his claim in this regard as the *return* of $1,200 because under the statute he cannot be considered to have *received* such pay. In addition, the Court notes that DD Form 2366, "Veteran's Educational Assistance Act of 1984 ( [New] GI Bill)", which he completed and signed, states that the $1,200 deduction "will not be refunded".

■ However, with further regard to the veteran's claim of entitlement to the $1,200, the Court notes that Congress, in 38 U.S.C. § 503(a), provided the Secretary of Veterans Affairs with the authority to act upon requests for equitable relief. Section 503(a) provides:

> If the Secretary determines that benefits administered by the Department have not been provided by reason of administrative error on the part of the Federal Government or any of its employees, the Secretary may provide such relief on account of such error as the Secretary determines equitable, including the payment of moneys to any person whom the Secretary determines is equitable entitled to such moneys.

In *Schleis v. Principi,* 3 Vet.App. 415, 418 (1992), the Court, referencing section 503(a), held: "Only the Secretary is permitted by statute to take equitable considerations into account in reviewing claims for administrative error." Likewise, in *Suttman v. Brown,* 5 Vet.App. 127, 138 (1993), the Court noted that the authority to award equitable relief under section 503(a) is committed " 'to the sole discretion of the Secretary' and that the BVA and, consequently, this Court are without jurisdiction to review the Secretary's exercise of that discretion." *See Kelley,* 3 Vet.

App. at 173; *Darrow v. Derwinski,* 2 Vet. App. 303, 306 (1992). Thus, this Court may not review the merits of appellant's contention of entitlement to equitable relief and any such claim must be presented directly to the Secretary. *See* 38 C.F.R. § 2.7 (1993).

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error that would warrant remand or reversal under 38 U.S.C. §§ 7252 and 7261. The Court thus affirms the September 21, 1992, BVA decision.

AFFIRMED.