Citation Nr: 1508838 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 11-01 353 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for polycystic kidney disease (PKD), including as secondary to hypertensive vascular disease. 

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities under 38 C.F.R. § 4.16(a).

3. Entitlement to an extraschedular TDIU due to service-connected disabilities under 38 C.F.R. § 4.16(b).


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

L. Willis, Associate Counsel 


INTRODUCTION

The Veteran served on active duty in the Army from April 1971 to March 1974 and from December 1974 to December 1978.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. 

In June 2013, the appellant testified at a travel Board hearing before the undersigned Veterans Law Judge. A copy of the transcript has been associated with the Veteran's virtual claims file. At the hearing, the Veteran agreed to waive RO consideration of evidence he was submitting at the hearing and that he intended to submit after the hearing - specifically Social Security Administration records. Based on the waiver, the Board may properly consider such newly received evidence. 38 C.F.R. § 20.1304 (2014).

In August 2014, the Board remanded the matter for additional development. The Board finds that there has been substantial compliance with its remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); Dymant v. West, 13 Vet. App. 141 (1999).

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

The issue of entitlement to a finding of a TDIU on an extraschedular basis is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 
FINDINGS OF FACT

1. The Veteran has a diagnosis of PKD, which has been classified as a congenital disease by the medical evidence of record. 

2. There is clear and unmistakable evidence that the Veteran's PKD preexisted service. 

3. The Veteran's PKD did not progress at an abnormally high rate during service; the disease's increase in severity was due to its natural progression. 

4. The Veteran's PKD is not caused or aggravated by his service-connected hypertension.

5. The Veteran is currently service-connected for major depressive disorder, rated at 30 percent disabling; hypertensive vascular disease, rated as 10 percent disabling; and a bilateral hearing loss disability, rated as noncompensable. His combined rating is 40 percent.


CONCLUSIONS OF LAWS

1. The Veteran's preexisting PKD was not aggravated by service or caused or aggravated by a service connected disorder. 38 U.S.C.A. §§ 1110, 1131, 1137, 1153, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.306, 3.310 (2014).

2. The criteria for a TDIU under 38 C.F.R. § 4.16(a) have not been met, and a schedular TDIU is not warranted. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 4.16(a) (2014).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

Under the VCAA, upon receipt of a complete or substantially complete application, VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a). The notice requirements apply to all five elements of a service connection claim: 1) veteran status; 2) existence of a disability; 3) a connection between the veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). The notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App.112 (2004). The notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

Here, the Board finds that the VA has satisfied its duties under the VCAA. Specifically, a letter was sent to the Veteran in February 2009 which detailed the claims process and advised the Veteran of the evidence and information needed to substantiate his claim. The letter further informed the Veteran of his obligations to provide necessary information to assist in his claim and the VA's obligations to obtain such evidence and information that is deemed to be in the VA's possession or that the VA has permission to obtain. The Veteran was also informed of VA's practices in assigning disability evaluations and effective dates for those evaluations. 

VA also fulfilled its duty to assist by obtaining the Veteran's service treatment and VA treatment records. Also, the Veteran was afforded VA examinations in May 2009 and April 2014. The April 2014 examiner reviewed the case file, examined the Veteran and provided an opinion regarding the Veteran's disability. An addendum opinion was also obtained in September 2014 which provided an opinion supported by well-reasoned rationale. Therefore, the Board finds that the examination and addendum were adequate for adjudication purposes. 

The Veteran's claim for entitlement to a TDIU under 38 C.F.R. § 4.16(a) is being denied solely due to lack of entitlement under the law, as discussed below. Therefore, there is no additional information or evidence that could be obtained to substantiate the claim, and the duties to notify and assist are not applicable. See Wensch v. Principi, 15 Vet. App. 362, 368 (2001).

For the foregoing reasons, the Board finds that VA has satisfied its duties to notify and assist the Veteran. Accordingly, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. §§ 5103(a), 5103A, or 38 C.F.R. § 3.159, and that the Veteran will not be prejudiced as a result of the Board's adjudication of his claim.

II. Service Connection 

Service connection may be established for a disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303, 3.304 (2014). To prevail on the issue of service connection on the merits, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Secondary service connection may be granted for disability that is proximately due to, or the result of, a service-connected disease or injury. 38 C.F.R. § 3.310 (a) (2014). The evidence must show that a current disability exists and that the current disability was either caused by or aggravated by a service-connected disability. See Allen v. Brown , 7 Vet. App. 439, 448 (1995) (en banc) (holding that when aggravation of a non-service-connected disability is proximately due to or the result of a service connected condition, such disability shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation).

It is important to note that a veteran is presumed in sound condition except for defects noted when examined and accepted for service. Clear and unmistakable evidence that the disability existed prior to service, and was not aggravated by service, will rebut the presumption of soundness. 38 U.S.C.A. § 1111 (West 2014). A preexisting disease will be considered to have been aggravated by active service where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306 (2014).

In VAOGCPREC 3-2003, the VA's General Counsel determined that the presumption of soundness is rebutted only where clear and unmistakable evidence shows that the condition existed prior to service and that it was not aggravated by service. The General Counsel concluded that 38 U.S.C.A. § 1111 requires VA to bear the burden of showing the absence of aggravation in order to rebut the presumption of sound condition. See also Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); Cotant v. Principi, 17 Vet. App. 116, 123-30 (2003).

The presumption of soundness does not apply to congenital defects because such defects "are not diseases or injuries" within the meaning of 38 U.S.C.A. §§ 1110 and 1111. See 38 C.F.R. § 3.303(c); see also Quirin v. Shinseki, 22 Vet. App. 390 (holding that the presumption of soundness does not apply to congenital defects); Winn v. Brown, 8 Vet. App. 510, 516 (1996) (holding that a non-disease or non-injury entity such as a congenital defect is "not the type of disease- or injury-related defect to which the presumption of soundness can apply"). 

However, if it is determined during service that a veteran suffers from a congenital disease, as opposed to a defect, VA cannot simply assume that, because of its congenital nature, the disease must have preexisted service. That is, the presumption of soundness still applies to congenital diseases that are not noted at entry. Quirin, 22 Vet. App. at 396-97. Once the presumption of attaches, VA must show by clear and unmistakable evidence that the congenital disease preexisted service and was not aggravated thereby. Monroe v. Brown, 4 Vet. App. 513, 515 (1993). VA may not rely on a regulation as a substitute for the requirement that it rely on independent medical evidence. Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). VA's Office of General Counsel has also confirmed that the existence of a congenital hereditary disease under 38 C.F.R. § 3.303(c) does not always rebut the presumption of soundness, and that service connection may be granted for congenital hereditary diseases which either first manifest themselves during service or which preexist service and progressed at an abnormally high rate during service. See VAOPGCPREC 67-90; 55 Fed. Reg. 43,253 (1990). 

In short, service connection is available for congenital diseases, but not defects, that are aggravated in service. Quirin, 22 Vet. App. at 394; Monroe v. Brown, 4 Vet. App. 513, 515 (1993). It follows that in such cases where a congenital condition is at issue, a VA medical opinion may be needed to determine whether the condition is a disease or defect, whether the presumption of soundness has been rebutted, and if so whether there was aggravation during service. Id. at 395 .

There were no notations of PKD on the Veteran's April 1971 and December 1974 enlistment examinations. He was treated for hypertension several times during service. In May 1978, the Veteran reported that he had a kidney contusion at the age of 19. A June 1978 excretory urogram revealed normal kidneys. 

The Veteran was afforded a VA examination in April 2014 where the examiner noted the Veteran's service history. She noted that the Veteran: (1) had no albuminuria on his April 1971, March 1974 and December 1974 examinations; (2) was normotensive at each examination; (3) was diagnosed with hypertension in May 1978; (4) had a normal excretory urogram in June 1978 and (5) was negative for albuminuria in 1978. She noted the Veteran's post service diagnosis of PKD and his familial history of PKD, particularly positive in his children and sister. 

She opined that the Veteran has autosomal dominant polycystic kidney disease, a genetically inherited disease. She opined that it permanently increased in severity during service, as evidenced by the development of the Veteran's hypertension. However, she opined that the Veteran's hypertension developed as a result of the natural progression of PKD and was therefore not aggravated by service. She cited to Up to Date Online, Course and Treatment of Autosomal Dominant Polycystic Kidney Disease, Chapman Abet al, Oct 2013, in support of her opinion. 

In August 2014, the Board requested that the examiner provide an opinion which addressed whether or not the Veteran's service-connected hypertension caused or aggravated his PKD. In September 2014, the examiner provided an addendum opinion which stated that it is less likely than not that the Veteran's hypertension caused his PKD. The examiner reasoned that it is not medically plausible for hypertension to cause PKD since PKD is a genetically inherited disorder. The examiner further opined that it is less likely than not that the Veteran's hypertension aggravated his PKD. The examiner reasoned that it is part of the natural progression of PKD to worsen over time and that a major factor that determines the rate of progression is the causative gene mutation. She cited to Up to Date Online, Course and Treatment of Autosomal Dominant Polycystic Kidney Disease, Chapman Abet al, June 2014, in support of her opinion. 

The Veteran submitted several opinions from Dr. T.D., an assistant professor of medicine at the Oregon Health and Science University. In October 2008, Dr. T.D. opined that the Veteran's PKD, although diagnosed post-service, caused the Veteran's in-service hypertension. She stated that if the Veteran's kidneys had been imaged at the time of discharge, his PKD would have been apparent. She noted that the Veteran's PKD causes many other health issues aside from hypertension, including nausea, anorexia, sleep disturbance, urinary and gastrointestinal problems. In July 2012, Dr. T.D. opined that the Veteran's PKD caused his hypertension. In April 2013, Dr. T.D. opined that it is more likely than not that the Veteran's hypertension is the result of his underlying PKD. She further opined that PKD is a genetic disorder that the Veteran was born with and therefore "he definitely had this disease when he was in the military."

The Board finds that the preponderance of the evidence is against the Veteran's claim. Since there was no notation of PKD on either of the Veteran's enlistment examinations, he is presumed sound, absent clear and unmistakable evidence that the disease preexisted service. The Board finds that clear and unmistakable evidence has been presented to rebut the presumption of soundness. Both the April 2014 VA examiner and the Veteran's private doctor, Dr. T.D., agree that the Veteran's PKD preexisted service. Therefore, VA must show by clear and unmistakable evidence that the congenital disease was not aggravated service. 

Here, the VA examiner opined that the Veteran's PKD was not aggravated by service and that its natural progression included the Veteran's development of hypertension. The Board finds the April 2014 VA examiner's opinion more probative than Dr. T.D.'s opinion. A medical opinion is most probative if it is factually accurate, fully articulated, and based on sound reasoning. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Dr. T.D. opined that the Veteran's PKD caused his hypertension, along with other ailments. However, only the VA examiner addressed the question as to whether the Veteran's PKD was aggravated by service or whether its increase in severity was due to its natural progression - which is the question which must be considered for cases involving pre-existing diseases. As Dr. T.D.'s opinion is deficient in that respect, the Board finds it to be less probative than the April 2014 VA examiner's opinion. The April 2014 examination report and September 2014 addendum not only addressed whether the Veteran's pre-existing PKD was aggravated by service, but also addressed whether the Veteran's service-connected hypertension caused or aggravated the PKD. 

The Board also notes that the Veteran is service-connected for hypertension, which the medical evidence of record indicates may be a symptom of PKD. However, this does not mean that the Veteran is automatically entitled to service connection for PKD. Rather, the evidence must independently show that the Veteran is entitled to service connection for PKD. Unfortunately, the evidence does not provide a basis for which service connection can be granted. 

The Board also notes the Veteran's submission of another Veteran's Board decision which granted service connection for PKD. However, by law, Board decisions are nonprecedential and are not binding on subsequent Board decisions. Prior decisions in other appeals may be considered in a case to the extent that they reasonably relate to the case, but each case presented to the Board will be decided on the basis of the individual facts of the case in light of applicable procedure and substantive law. See 38 C.F.R. § 20.1303 (2014). Unfortunately, the Board decision submitted by the Veteran involves a different factual and medical background than the Veteran's and therefore warranted a different outcome. 

Given that the Board has found the unfavorable April 2014 VA examination report and September addendum opinion to be the most probative evidence of record, the preponderance of the evidence is against the Veteran's claim for service connection, and the claim must be denied. As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt rule does not apply. See 38 U.S.C.A §5107 (West 2014).

III. TDIU

The Veteran has alleged that his PKD has prevented him from engaging in substantially gainful employment. Specifically, he testified at the August 2013 Board hearing that his PKD and its varied symptoms made it difficult to walk and drive around in his former position as a mail handler. See Board Hearing Transcript, pp. 9-16. 

Total disability based on unemployability exists where there is present any impairment of mind and body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. When the schedular rating is less than total, a TDIU may be assigned if the Veteran meets certain schedular criteria under 38 C.F.R. § 4.16 (a) and is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. If there is only one service-connected disability, this disability should be rated at 60 percent or more; if there are two or more disabilities, at least one disability should be rated at 40 percent or more and the combined evaluation should be 70 percent or more. 38 C.F.R. § 4.16(a).

Here, the Veteran is currently service-connected for major depressive disorder, rated at 30 percent disabling; hypertensive vascular disease, rated as 10 percent disabling; and a bilateral hearing loss disability, rated as noncompensable. His combined rating is 40 percent. Therefore, the criteria for a TDIU under 38 C.F.R. § 4.16(a) are not met.

The Board is bound by the law and is without authority to grant benefits on an equitable basis. 38 U.S.C.A. §§ 503, 7104; Harvey v. Brown, 6 Vet. App. 416, 425 (1994). In cases such as this, where the law is dispositive, the claim must be denied because of the absence of legal merit. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because the Veteran does not meet the criteria for a TDIU under 38 C.F.R. § 4.16(a), a TDIU under 38 C.F.R. § 4.16(a) is denied.


ORDER

Entitlement to service connection for PKD is denied. 

Entitlement to a TDIU due to service-connected disabilities under 38 C.F.R. § 4.16(a) is denied.


REMAND

Even when the criteria under 38 C.F.R. § 4.16(a) are not met, entitlement to a TDIU on an extraschedular basis may be considered when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. §4.16 (b). The Board does not have the authority to assign an extraschedular TDIU in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). Rating boards will refer to the Director of the Compensation Service for extra-schedular consideration all cases of veterans who are unemployable by reason of service connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16(a). 

As mentioned above, the Board has denied entitlement to service connection for PKD, which the Veteran has contended prevents him from engaging in substantially gainful employment. Nonetheless, the Board must still decide whether any of the Veteran's service-connected disabilities cause unemployability. In this case, the Board finds that referral for extra-schedular consideration under 38 C.F.R. § 4.16(b) is warranted.

The evidence of record indicates that the Veteran has an educational background of 2 years of college and worked as a mail carrier from April 1998 to June 2012 and previously as a corrections officer. A Residual Functional Capacity Assessment included in the Veteran's Social Security Administration (SSA) disability records indicates that due to the Veteran's hearing loss, he should avoid jobs that require excellent hearing. His Mental Residual Functional Capacity Assessment indicates that the Veteran is capable of limited understanding, remembering and carrying out short and simple routine task and not capable of consistently carrying out complex tasks. It concluded that the Veteran is capable of sustaining a regular workday/workweek. 

In a May 2011 VA mental examination report addendum, the examiner noted that the Veteran reported frustration from not being able to hear well. He reported that his depression related to his hearing loss makes it difficult for him to work. He also reported that his depression stems from him feeling hopeless about his medical problems, including his hypertension. The examiner opined that the Veteran's depression, secondary to hearing loss mildly affect the Veteran's performance both at work and his relationship with his wife. 

Based upon the VA examination, the Veteran's employment history, and his level of education, the Veteran may be unemployable as a result of his service-connected hearing loss, hypertension and depression. His depression causes him to be limited to jobs that require simple tasks. His hearing loss disability causes him to be limited to jobs that require excellent hearing. He has 15 years of experience as a mail carrier and corrections officer which require excellent hearing and sometimes difficult tasks. It is difficult to come up with a position for which the Veteran is qualified and for which he can physically or mentally handle. Therefore, the Board is compelled to remand the claim for entitlement to TDIU on an extraschedular basis as a result of service-connected disabilities for referral to the Director of Compensation in accordance with 38 C.F.R. § 4.16(b) for consideration of whether this benefit is warranted on an extraschedular basis.

Since the claims file is being returned it should be updated to include any recent VA treatment records that are not of record. See 38 C.F.R. § 3.159(c)(2); see also Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following action:

1. Obtain the Veteran's VA treatment records dated from September 2014 to present.

2. Then, pursuant to 38 C.F.R. § 4.16(b), refer the claim for entitlement to a TDIU on an extraschedular basis to VA's Director of Compensation for extraschedular consideration as to whether the Veteran is unemployable due to his service-connected disabilities. 

3. Ensure that the above development has been completed in accordance with the above directives. After undertaking any other development deemed appropriate, readjudicate the issue on appeal. If any benefit sought remains denied, the appellant should be furnished with a supplemental statement of the case and be afforded an appropriate period in which to respond.


The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs