Citation Nr: 1761213 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 10-47 251 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUE

Entitlement to special monthly compensation based upon the need for regular aid and attendance or due to housebound status.


REPRESENTATION

The Veteran is represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Sean G. Pflugner, Counsel
INTRODUCTION

The Veteran served on active duty from December 1962 to July 1968, including service within the Republic of Vietnam where a Purple Heart was earned. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut. 

In January 2012, the Veteran testified at a hearing before the undersigned Veterans Law Judge (VLJ). A transcript of this hearing has been associated with the claims file. Although the Veteran was notified in February 2013 that the VLJ who conducted the January 2012 hearing was no longer at the Board, the Board notes that the VLJ has returned to the Board and will be deciding the pending appeal. 

The appeal was most recently before the Board in March 2016, at which time it was remanded for additional development. After the issuance of a supplemental statement of the case, the appeal has been remitted to the Board for further appellate review. 

This appeal has been advanced on the Board's docket. 38 U.S.C. § 7107(a)(2) (West 2014); 38 C.F.R. § 20.900(c) (2017).


FINDING OF FACT

The Veteran is not in need of the regular aid and attendance of another person and is not housebound as a result of service-connected disabilities.






CONCLUSION OF LAW

The criteria for special monthly compensation based on the need for aid and attendance or housebound status have not been met. 38 U.S.C. § 1114 (West 2014); 38 C.F.R. §§ 3.350, 3.352 (2017). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board remanded the Veteran's above-captioned claim on several previous occasions for additional development. Specifically, the remand directives requested that the Agency of Original Jurisdiction (AOJ) attempt to obtain relevant evidence not already associated with the claims file, verify dates of service, and for the AOJ to consider in the first instance disabilities for which service connection had been recently granted, but were not previously contemplated in prior AOJ adjudications. A review of the record establishes that the AOJ substantially complied with all of the Board's prior remand directives and, thus, a remand for corrective action is not warranted. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran is claiming entitlement to special monthly compensation due to her service-connected disabilities.

Special monthly compensation based on the need for aid and attendance of another is payable when the veteran, due to service-connected disability, is permanently bedridden or has such significant service-connected disabilities as to be in need of regular aid and attendance. 38 U.S.C. § 1114(l). The criteria for determining when a Veteran is so helpless as to be in need of regular aid and attendance, including a determination that she is permanently bedridden, are contained in 38 C.F.R. § 3.352(a). 38 C.F.R. § 3.350(b)(3)-(4).

The following will be considered in determining the need for regular aid and attendance: inability of veteran to dress or undress herself, or to keep herself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of veteran to feed herself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the veteran from hazards or dangers incident to her daily environment. Bedridden, will be that condition which, through its essential character, actually requires that the veteran remain in bed. The fact that the veteran has voluntarily taken to bed or that a physician has prescribed rest in bed for the greater or lesser part of the day to promote convalescence or cure will not suffice. 38 C.F.R. § 3.352(a).

It is not required that all of the disabling conditions enumerated in 38 C.F.R. § 3.352(a) be found to exist before a favorable rating may be made. The particular personal functions which the Veteran is unable to perform should be considered in connection with her condition as a whole. It is only necessary that the evidence establish that the Veteran is so helpless as to need regular aid and attendance, not that there be a constant need. Determinations that the Veteran is so helpless, as to be in need of regular aid and attendance will not be based solely upon an opinion that the veteran's condition is such as would require her to be in bed. They must be based on the actual requirement of personal assistance from others. 38 C.F.R. § 3.352(a).

Special monthly compensation at the housebound rate is payable when a Veteran has a single service-connected disability rated 100 percent and (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems; or, (2) is permanently housebound by reason of service-connected disability or disabilities. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i)(1). 

The requirements of 38 U.S.C. § 1114(s)(2) are met when a Veteran is substantially confined as a direct result of service-connected disabilities to her dwelling and the immediate premises or, if institutionalized, to the ward or clinical area, and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout her lifetime. 38 C.F.R. § 3.350(i)(2). 

The Veteran has not asserted that she is entitled to special monthly compensation due to housebound status, and the evidence of record does not otherwise support finding that she is housebound. 

In her May 2010 claim, she asserted that she was unable to care for herself. 

According to an October 2010 VA treatment report, the Veteran stated that she traveled to Yellowstone National Park with her friends, and endorsed shortness of breath with traveling and "with exertion in the mountains." 

During the January 2012 hearing, the Veteran neither testified that she was housebound nor described symptoms or circumstances that more nearly approximated being housebound. 38 C.F.R. § 4.7 (2017).

In June 2013, the Veteran underwent a VA examination. The examiner indicated that the Veteran was neither bedridden nor hospitalized, and that she was able to travel beyond her then current domicile. The Veteran endorsed going out to eat and grocery shopping and attending doctor's appointments on her own. She also reported walking for exercise, although she states that the distance was limited to half of a mile. Significantly, the examiner determined that the circumstances under which the Veteran could leave the home were "unrestricted."

According to a July 2015 VA treatment report, the Veteran reported remaining "active" and that she had gone camping the previous week.

In April 2017, the Veteran underwent a VA psychiatric examination during which she reported going on frequent walks and attending monthly motorcycle club "get-togethers." 

VA treatment records dated in 2009 through July 2016 showed ongoing treatment for both service-connected and non-service-connected disabilities. None of these records shows that the Veteran was, or complained of being, housebound. Further, these records do not show that the Veteran more nearly approximately being housebound due to her service-connected disabilities. Id.

Additionally, for no distinct period during the pendency of this claim has one of the Veteran's service-connected disabilities been assigned a 100 percent rating. The Veteran's service-connected posttraumatic stress disorder (PTSD) has been assigned a 70 percent rating throughout the pendency of the claim; a 50 percent rating has been assigned to her low back disability throughout the pendency of the claim, and a 10 percent rating has been assigned to her coronary artery disease since May 6, 2010.

Based on the above, the Board finds that the Veteran is not substantially confined to her dwelling and the immediate premises as a direct result of service-connected disabilities and she is not institutionalized. Consequently, special monthly compensation based on housebound status is not warranted.

With respect to the Veteran's need for regular aid and attendance of another person, the evidence of record shows that she is able to perform her activities of daily living, to include dressing and undressing herself, feeding herself, and attending to the wants of nature. Further, as discussed above, an October 2010 VA treatment report showed that she had traveled with friends to Yellowstone National Park and was exerting herself in the mountains. 

However, during the January 2012 Board hearing, the Veteran asserted that she lived with someone who assisted her with taking medication, preparing meals, and other activities of daily living. Specifically, she stated that she needed help putting on footwear and socks "at times" due to her back. She asserted that she needed help bathing, but clarified that this was limited to the installation of rails for stability; there was no indication that she need the assistance from another person to bathe. She denied any accommodations for feeding or cooking beyond needing to rest. She said the person living with her also took her to doctor's appointments "at times," but not lately, and would take her to pharmacies to get her blood pressure measured "at times." The Veteran also asserted that she fell once in the past year due to her back disability, and experienced past instances of staying in bed due to depression associated with her PTSD. When asked specifically if she needed regular aid and attendance of another person, the Veteran responded as follows: "Yes, I would like to have help in house care...keeping the house in better order," with nothing further. In describing her typical day, the Veteran testified that she cleans up, goes downstairs to get something to eat and take medications. Her day is spent either reading or watching television. She may have telephonic conversations with a friend or have an appointment to attend.

As shown by the evidence dated after the Board hearing, including the June 2013 and April 2017 VA examinations, the Veteran subsequently began living on her own, and was been able to care for herself, shop for groceries, prepare meals, take medications, attend doctor's appointments, exercise, participate in a motorcycle club, and begin piano lessons.

The Board acknowledges that the Veteran has been granted a total rating based on individual unemployability due to her service-connected disability and is in receipt of Social Security Administration (SSA) disability benefits. However, the Board is not bound by any determination of SSA. 

The Board concludes that the totality of the evidence is to the effect that the Veteran may need some or occasional assistance, especially in the early portion of this appeal. However, the Veteran was not then and is not now so helpless as to require the regular aid and attendance of another person or unable to complete her activities of daily living without such assistance as a consequence of her service-connected disabilities. Further, the Board finds that the Veteran is not bedridden due to her service-connected disabilities. 

In summary, the Board finds that special monthly compensation based on the need for the regular aid and attendance of another person or housebound status is not warranted. See 38 U.S.C. § 1114(l); 38 C.F.R. §§ 3.350(b)(3), 3.352(a). 

In making this determination, the Board considered the June 2010 opinion by Sally G. Haskell, M.D. The opinion simply recommended the Veteran for the Aid and Assistance Program, noted the Veteran is service connected for a vertebral fracture and PTSD, and reports a recent diagnosis of high blood pressure and heart disease. Dr. Haskell's opinion is conclusory, in that it provides no rationale as to why the Veteran's service-connected disabilities rendered her housebound or how she needs the regular aid and attendance from another person. As such, the Board assigns no probative weight to the opinion.

While sympathetic to the Veteran's claim, the Board is bound by the laws and regulations and is without authority to grant benefits on an equitable basis. See 38 U.S.C. §§ 503, 7104 (West 2014); Harvey v. Brown, 6 Vet. App. 416, 425 (1994). The Board further observes that "no equities, no matter how compelling, can create a right to payment out of the United States Treasury which has not been provided for by Congress." Smith (Edward F.) v. Derwinski, 2 Vet. App. 429, 432-33 (1992) [citing Office of Personnel Management v. Richmond, 496 U.S. 414, 426 (1990)]. Thus, the Board is constrained to apply the law as Congress has created it and cannot extend benefits out of empathy for a particular claimant.








ORDER

Special monthly compensation based upon the need for regular aid and attendance or due to housebound status is denied.




____________________________________________
T. REYNOLDS
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs

Department of Veterans Affairs